S04G1228, S04G1229. McKESSON CORPORATION et al.
v. GREEN et al. (two cases).

(610 SE2d 54)

THOMPSON, Justice.

These cases arise out of the merger of two publicly-traded corporations, McKesson Corporation and HBO & Company ("HBOC"). In January 1999 McKesson acquired HBOC in a stock-for-stock deal in which McKesson purchased the stock of HBOC shareholders with McKesson stock at an exchange rate agreed to by the parties. The rate was based on the information (financial and otherwise) exchanged and warranted by the corporations. A few months later, McKesson discovered that, due to accounting fraud, HBOC's common stock had been overvalued and that, consequently, McKesson had paid too much for it. To investigate the accounting problems at HBOC, McKesson's audit committee retained the law firm of Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden"), which in turn retained the accounting firm of PricewaterhouseCoopers, LLP ("PwC"). Skadden and PwC spent thousands of hours investigating HBOC's accounting practices. Their findings were set out in a 180-page report supported by three volumes of back-up materials and interview memoranda. McKesson voluntarily provided the audit documents to the SEC and the United States Attorney's Office, both of which were conducting their own investigations of HBOC and McKesson. The documents were provided pursuant to confidentiality agreements specifying that McKesson was not waiving work-product protection.

After a sharp decline in value of McKesson stock, many of McKesson's shareholders, including plaintiffs in this case, who were former shareholders of HBOC, sued McKesson alleging that they had incurred stock losses as a result of the accounting fraud. McKesson filed a counterclaim seeking damages for unjust enrichment on the ground that the HBOC shareholders received more shares of McKesson stock than they were entitled to receive due to the accounting fraud. The trial court granted a motion to compel the production of the audit documents; it denied a motion to dismiss McKesson's unjust enrichment counterclaim.

On appeal, the Court of Appeals affirmed the former ruling and reversed the latter. *McKesson Corp. v. Green*, 266 Ga. App. 157 (597 SE2d 447) (2004). We granted a writ of certiorari to consider (1) whether McKesson waived work-product protection when it provided its audit documents to the SEC and (2) whether McKesson's unjust enrichment theory can withstand motion to dismiss scrutiny.

1. McKesson asserts that the Court of Appeals erred in determining that it waived its work-product protection. In this regard, McKesson argues that (a) the appellate court improperly put the burden on McKesson to prove that there was no waiver; (b) McKesson

did not waive work-product protection by sharing the audit documents with the SEC; and (c) the confidentiality agreement between McKesson and the SEC was sufficient to protect against a waiver.

(a) The majority of jurisdictions which have considered the issue have determined that the burden of proving a waiver of work-product protection lies on the party asserting the waiver. See *Ferko v. NASCAR*, 218 FRD 125, 136 (E.D. Tex. 2003) (differentiating between burden to prove work-product protection, which lies on party asserting the waiver, and attorney-client privilege which lies on party claiming the privilege); *Monsanto Co. v. Aventis Cropscience*, 214 FRD 545, 546 (E.D. Mo. 2002); *Greene, Tweed of Delaware v. DuPont Dow Elastomers*, 202 FRD 418, 423 (E.D. Pa. 2001). We believe this rule is sound and that Georgia is in line with it. See generally *McKesson HBOC v. Adler*, 254 Ga. App. 500, 503 (562 SE2d 809) (2002) (unlike attorney-client privilege, "the work product doctrine directly protects the adversarial system by allowing attorneys to prepare cases without concern that their work will be used against their clients"). McKesson asserts the Court of Appeals departed from this rule by shifting the burden to McKesson to prove non-waiver. We disagree. Nowhere in its opinion does the Court of Appeals explicitly or implicitly place this burden on McKesson. The mere fact that the Court of Appeals cited cases in which the burden to prove non-waiver of work-product protection appears to have been put on the party asserting protection,[1] does not mean that the appellate court so held. The cases were cited in support of an altogether different proposition.

(b) We agree with the Court of Appeals that the evidence supports the conclusion that McKesson waived work-product protection when it provided the audit documents to the SEC. The appellate court was authorized to find that McKesson and the SEC were actual or potential adversaries when the documents were disclosed. *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F3d 289, 306, n. 28 (6th Cir. 2002) ("'prevailing rule [is] that disclosure to an adversary, real or potential, forfeits work-product protection'"); *United States v. Mass. Institute of Technology*, 129 F3d 681, 687 (1st Cir. 1997); *United States v. Stewart*, 287 FSupp.2d 461, 468-469 (S.D. N.Y. 2003). See also *United States v. Bergonzi*, supra; *McKesson HBOC v. Superior Court of San Francisco County*, supra. McKesson's contention that it shared a "common interest" with the SEC, and that, therefore, McKesson and the SEC did not have an adversarial relationship, is unconvincing.

---

[1] See, e.g., *United States v. Bergonzi*, 216 FRD 487 (N.D. Cal. 2003); *McKesson HBOC v. Superior Court of San Francisco County*, 115 Cal. App.4th 1229 (9 Cal. Rptr. 3d 812) (2004).

When a party discloses protected materials to a government agency investigating allegations against it, it uses those materials to forestall prosecution (if the charges are unfounded) or to obtain lenient treatment (in the case of well-founded allegations). These objectives, however rational, are foreign to the objectives underlying the work-product doctrine. Moreover, an exception for disclosures to government agencies is not necessary to further the doctrine's purpose; attorneys are still free to prepare their cases without fear of disclosure to an adversary as long as they and their clients refrain from making such disclosures themselves. Creating an exception for disclosures to government agencies may actually hinder the operation of the work-product doctrine. If internal investigations are undertaken with an eye to later disclosing the results to a government agency, the outside counsel conducting the investigation may hesitate to pursue unfavorable information or legal theories about the corporation. Thus, allowing a party to preserve the doctrine's protection while disclosing work product to a government agency could actually discourage attorneys from fully preparing their cases.

*Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F2d 1414, 1429-1430 (3rd Cir. 1991).

(c) McKesson's confidentiality agreement with the SEC was far from airtight. It allowed the SEC to give the documents to others if it deemed that course of action to be "in furtherance of the [SEC's] discharge of its duties and responsibilities."[2] Thus, McKesson could not be certain that the audit documents would not be disclosed to others. See generally *United States v. AT&T Co.*, 642 F2d 1285, 1299-1300 (D.C. Cir. 1980) (case against waiver is stronger when work product shared under "guarantee of confidentiality"). It follows that the confidentiality agreement did not ensure that the audit documents would remain confidential. *United States v. Bergonzi*, supra; *McKesson HBOC v. Superior Court of San Francisco County*, supra.

2. In its counterclaim, McKesson asserted that Green and the other plaintiffs were liable under a theory of unjust enrichment because, as shareholders of HBOC, they reaped the benefits of the accounting fraud. The problem with this theory is twofold: First, the

---

[2] Likewise, McKesson's agreement with the United States Attorney's Office allowed for disclosure of the documents in the course of "any criminal investigation or prosecution, including any prosecution of McKesson."

shareholders cannot be held accountable for the fraudulent acts of HBOC. *Exchange Bank of Macon v. Macon Constr. Co.*, 97 Ga. 1 (1) (25 SE 326) (1895). After all, the shareholders and HBOC are separate and distinct legal entities. Id.; *Clark v. Cauthen*, 239 Ga. App. 226 (520 SE2d 477) (1999). Second, McKesson failed to allege that these shareholders controlled HBOC or used the corporate form to defraud McKesson. Thus, McKesson has given us no reason to disregard the corporate form. See *Kissun v. Humana, Inc.*, 267 Ga. 419 (479 SE2d 751) (1997). The mere fact that the shareholders may have received a windfall, in the form of additional shares of McKesson stock, at the time of the merger does not make them liable to McKesson. As the Ninth Circuit Court of Appeals said when it affirmed the dismissal of McKesson's unjust enrichment claim in a related case, "[t]he sanctity of the corporate entity, as well as the policies militating against subjecting individual shareholders of a public company to liability for a merger gone bad, defeat McKesson's effort to turn corporate law inside out." *McKesson HBOC v. New York State &c. Fund*, 339 F3d 1087, 1093 (9th Cir. 2003).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 7, 2005.

*Morris, Manning & Martin, Joseph R. Manning, John H. Williamson,* for appellants.

*Bondurant, Mixson & Elmore, H. Lamar Mixson, Jill A. Pryor, Jason M. Freier, Paul, Hastings, Janofsky & Walker, John G. Parker, Kirkley & Payne, Dorothy Y. Kirkley,* for appellees.

*Edward C. Schweitzer, Myer Eisenberg,* amici curiae.