A07A1206, A07A1207. AUSTIN et al. v. MORELAND et al.; and vice versa.
(653 SE2d 347)

MILLER, Judge.

These appeals arise out of a medical malpractice lawsuit filed by Amanda Moreland against Dr. Michael Austin and his employers

---

(collectively, "Dr. Austin") following the death of Mrs. Moreland's husband at Coliseum Medical Center in Macon. Mrs. Moreland's complaint sought, among other things, an interlocutory injunction enjoining Dr. Austin from "inducing any healthcare provider to divulge protected health information concerning [Mr.] Moreland" except in compliance with the requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). The trial court granted such request for injunctive relief in part, holding that Dr. Austin could interview Mr. Moreland's prior treating physicians, but only after giving reasonable notice to Mrs. Moreland so that her attorneys could be present during those discussions.

In Case No. A07A1206, Dr. Austin appeals the partial grant of Mrs. Moreland's request for injunctive relief, claiming (i) that such relief was barred by the doctrine of unclean hands and (ii) that all of the protected health information possessed by the prior treating physicians had previously been disclosed in compliance with HIPAA. In Case No. A07A1207, Mrs. Moreland cross-appeals, claiming that the trial court erred in failing to sanction Dr. Austin for conducting ex parte communications with her late husband's prior treating physicians. As discussed below, we hold that the trial court erred in finding that HIPAA prohibited Dr. Austin from conducting ex parte communications with Mr. Moreland's prior treating physicians because such meetings do not necessitate the disclosure of health information protected by the HIPAA privacy rule.

Equitable relief, such as the partial grant of a request for an interlocutory injunction, "is generally a matter within the sound discretion of the trial court[, and t]he action of the trial court should be sustained on review where such discretion has not been abused. [Cit.]" *State Farm &c. Ins. Co. v. Mabry*, 274 Ga. 498, 510 (5) (556 SE2d 114) (2001).

Here, the record reveals that Mr. Moreland was admitted to the emergency department of Coliseum Medical Center at approximately 5:50 p.m. on December 21, 1999. Shortly thereafter, his blood pressure was recorded at 95/53, and Dr. Austin ordered that he be infused with whole blood and fluids. Dr. Austin continued to treat Mr. Moreland until he died at approximately 11:22 that evening.

On January 17, 2001, Mrs. Moreland filed a medical malpractice complaint against Dr. Austin in the State Court of Bibb County, alleging that Mr. Moreland died because the transfusions were conducted too quickly. Both with her complaint and during discovery, Moreland produced her husband's medical records, including documents relating to his prior treatment by three cardiologists: Dr. Jose Rodriguez of Houston Cardiology Associates, Dr. Juan Esnard of Heart of Georgia Cardiology, and Dr. Edward Young of Coliseum Medical Center. Each of the foregoing physicians had treated Mr.

Moreland prior to his admission to Coliseum Medical Center and treatment by Dr. Austin on December 21, 1999.

In June 2003, Dr. Austin located Dr. Rodriguez, who had treated Mr. Moreland from August 1996 through July 1998, and asked him to provide "an assessment of Mr. Moreland's cardiovascular status and his prognosis." Mrs. Moreland objected to such contact, claiming that it violated the HIPAA privacy rule, which became effective in April 2003. Soon thereafter, Dr. Austin made similar requests of Drs. Esnard and Young, who had treated Mr. Moreland from December 1998 through October 1999 and in August 1999, respectively. Mrs. Moreland objected to Dr. Austin's contact with Drs. Esnard and Young as well. On February 2, 2004, the state court judge found that HIPAA did not prevent Dr. Austin from contacting Mr. Moreland's prior treating physicians and that Drs. Rodriguez, Esnard, and Young could serve as expert witnesses for the defense, presumably to establish that Dr. Austin rendered appropriate treatment to Mr. Moreland.

Following the adverse ruling by the judge of the state court, Mrs. Moreland dismissed her lawsuit without prejudice on February 9, 2004, and refiled the same in the Superior Court of Bibb County on April 5, 2004. In addition to asserting her medical malpractice claims, however, Mrs. Moreland also requested the injunctive relief at issue here. Dr. Austin filed a motion for partial summary judgment as to such request. The trial court denied Dr. Austin's motion on September 15, 2005, but it did not impose sanctions against Dr. Austin for contacting the prior treating physicians as desired by Mrs. Moreland. Both Dr. Austin and Mrs. Moreland appealed that ruling, and this Court dismissed such appeals for failure to comply with the interlocutory appeal requirements of OCGA § 5-6-34 (b).

On April 18, 2006, the trial court vacated its September 15, 2005 order and issued a revised order partially granting Mrs. Moreland's request for injunctive relief. These appeals followed.

### Case No. A07A1206

1. Dr. Austin alleges that the trial court erred in partially granting Mrs. Moreland's request for injunctive relief because such relief was barred by the doctrine of unclean hands. We disagree.

The doctrine of unclean hands is a well-established principle, providing that "[h]e who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action." OCGA § 23-1-10. "The unclean-hands maxim . . . has reference to an inequity which infects the cause of action so that to entertain it would be violative of conscience." (Citation and punctuation omitted.) *Partain v. Maddox*, 227 Ga. 623,

637 (4) (a) (182 SE2d 450) (1971). To assert the doctrine successfully, a party must demonstrate that the wrongdoing is directly related to the claim against which unclean hands is asserted. *Adams v. Crowell*, 157 Ga. App. 576, 577 (278 SE2d 151) (1981); see also *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U. S. 240, 245 (54 SC 146, 78 LE 293) (1933).

Here, Dr. Austin claims that Mrs. Moreland has unclean hands as a result of actions she has taken in the prosecution of her claims — primarily by dismissing her state court claim following the issuance of an adverse ruling as to her request for interlocutory relief and by subsequently refiling her claim in superior court. Any questionable behavior by Mrs. Moreland in her strategic use of the judicial system, however, is not directly related to the claims she seeks to pursue. As a result, the trial court did not abuse its discretion in finding that the doctrine of unclean hands does not bar Mrs. Moreland's request for injunctive relief. See *Zaimis v. Sharis*, 275 Ga. 532, 533 (2) (570 SE2d 313) (2002).

2. Dr. Austin also claims that the trial court erred in partially granting Mrs. Moreland's request for injunctive relief because all of the protected health information possessed by the prior treating physicians regarding Mr. Moreland had already been disclosed in compliance with HIPAA. Here, the trial court determined that HIPAA prohibits any ex parte communications between Dr. Austin and Mr. Moreland's prior treating physicians. Given that the trial court failed to consider whether such communications included the disclosure of protected health information in violation of HIPAA, we hold that the trial court erred.

Pursuant to HIPAA, the Secretary of the Department of Health and Human Services was tasked with creating national standards to "ensure the integrity and confidentiality" of individually identifiable health information. 42 USCA § 1320d-2 (d) (2) (A). The regulations promulgating these standards, collectively known as the "HIPAA privacy rule," became effective on April 14, 2003, and set forth standards and procedures for the collection and disclosure of "protected health information."[1] The HIPAA privacy rule prohibits "covered entities," such as health care providers, from using and disclosing health information except as required or permitted by the regulations. 45 CFR §§ 160.103; 164.501.

---

[1] Protected health information includes "any information, whether oral or recorded in any form or medium, that: (1) [i]s created or received by a health care provider . . . ; and (2) [r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual." 45 CFR § 160.103.

These regulations provide that "[a] covered entity may disclose protected health information in the course of any judicial . . . proceeding" either (i) in response to a court order; or (ii) "[i]n response to a subpoena, discovery request, or other lawful process." 45 CFR § 164.512 (e) (1). To disclose the information without a court order, however, the covered entity must receive "satisfactory assurance . . . that reasonable efforts have been made [either] (A) . . . to ensure that the individual who is the subject of the [requested] protected health information . . . has been given notice of the request" (as well as an opportunity to object) or "(B) . . . to secure a qualified protective order" prohibiting the parties from using or disclosing the information outside of the judicial proceeding and requiring the destruction of the information (or return of it to the covered entity) following the termination of the proceeding. 45 CFR § 164.512 (e) (1) (ii)-(v).

The Department of Health and Human Services has indicated that, in the context of medical malpractice lawsuits, these regulations were meant to be used in conjunction with, rather than in lieu of, any existing rules, stating that the regulations:

> [were] not intended to disrupt current practice whereby an individual who is a party to a proceeding and has put his or her medical condition at issue will not prevail without consenting to the production of his or her protected health information. In such cases, we presume that parties will have ample notice and an opportunity to object in the context of the proceeding in which the individual is a party.

65 Fed. Reg. 82462, 82530.

In this regard, we note that, in the context of a judicial proceeding, the Georgia Civil Practice Act places more stringent requirements than HIPAA does on requests for documents from a third-party health care provider. While the HIPAA privacy rule allows such a third party to produce a patient's medical records, even absent a court order or notice to the patient (see 45 CFR § 164.512 (e) (1) (ii) (B)), the Georgia Civil Practice Act does not. Instead, OCGA § 9-11-34 (c) (2) provides that when a request for production of documents is served on a third party who is a "practitioner of the healing arts," a copy of the request must be sent to the person whose records are sought, and any party may then file an objection to such request, thus preventing the production of documents except subject to a court order.

Because HIPAA does not preempt contrary provisions of state law if the state law offers more stringent privacy protection (see 45 CFR § 160.203 (b)), OCGA § 9-11-34 (c) is not preempted by HIPAA. Compare *Allen v. Wright*, 282 Ga. 9 (644 SE2d 814) (2007) (holding that OCGA § 9-11-9.2 was preempted by HIPAA because it required

plaintiff to file a medical authorization form providing less stringent privacy protections than HIPAA).

Contrary to the findings of the trial court, HIPAA does not preclude ex parte communications between defense counsel and a plaintiff's prior treating physicians. Instead, provided that protected health information is not disclosed by a covered entity except pursuant to the HIPAA privacy rule, HIPAA allows defense counsel to continue to participate in ex parte communications to the extent such communications are authorized by Georgia law. See *Orr v. Sievert*, 162 Ga. App. 677 (292 SE2d 548) (1982) (finding that [prior to HIPAA] the placing of one's medical condition at issue in litigation acted as an automatic waiver of a patient's right to privacy in his medical records related to that condition).

Here, Dr. Austin maintains that all of Mr. Moreland's protected health information *was* disclosed pursuant to the HIPAA privacy rule because he complied with the requirements of OCGA § 9-11-34 (c) (2) by providing notice and an opportunity to object to both Mrs. Moreland and the prior treating physicians. Dr. Austin fails to support such claim with citations to the record, however, and this Court will not search for them. Court of Appeals Rule 25 (c) (3). Dr. Austin also claims that "all of the healthcare information possessed by Drs. Esnard, Young, and Rodriguez was . . . freely, affirmatively and without limitation provided to [Dr. Austin] years before the effective date of the HIPAA privacy provisions on April 14, 2003." These questions of fact apparently were not considered by the trial court in light of its finding that HIPAA precluded any ex parte communications with the prior treating physicians, regardless of whether such communications included the disclosure of protected health information in violation of the HIPAA privacy rule.

45 CFR § 164.532 (a) provides that covered entities may continue to disclose protected health information pursuant to a consent or authorization obtained prior to the effective date of the HIPAA privacy rule. If, as Dr. Austin claims, all of the protected health information possessed by Mr. Moreland's prior treating physicians was disclosed with the consent of Mrs. Moreland prior to April 14, 2003, then the physicians may continue to disclose such information without restriction under HIPAA. As a result, this case is remanded to the trial court to determine whether Drs. Rodriguez, Esnard, and Young possess any protected health information regarding Mr. Moreland that has not already been disclosed in accordance with 45 CFR § 164.532 (a) or in accordance with the notice and consent provisions of 45 CFR § 164.512 (e) (1) (ii) (A). If it determines that they do, the trial court may issue an order restricting the ability of the prior

treating physicians to disclose such information to Dr. Austin except in accordance with the HIPAA privacy rule and the Georgia Civil Practice Act.

### Case No. A07A1207

Given our holding in Case No. A07A1206 that the superior court erred in holding that HIPAA proscribed all ex parte communications between Dr. Austin and Mr. Moreland's prior treating physicians, Mrs. Moreland's cross-appeal, alleging that the superior court erred in failing to sanction Dr. Austin for HIPAA violations in connection with prior ex parte communications, is dismissed as moot.

*Judgment reversed and case remanded with direction in Case No. A07A1206. Appeal dismissed as moot in Case No. A07A1207. Barnes, C. J., and Smith, P. J., concur.*

DECIDED OCTOBER 10, 2007 —
RECONSIDERATION DENIED NOVEMBER 7, 2007 — 

*Green, Johnson & Landers, Henry D. Green, Jr.,* for appellants.
*Don C. Keenan, Charles H. Allen, Allan L. Galbraith,* for appellees.
*Robert T. Strang,* amicus curiae.