A07A1216. MATSON v. NOBLE INVESTMENT GROUP, LLC et al.
(655 SE2d 275)

ADAMS, Judge.

Candace Matson appeals from the trial court's grant of summary judgment to the defendants in her personal injury lawsuit against Noble Investment Group, LLC, Noble Investment Group Georgia, LLC (sometimes referred to collectively as the "Noble defendants"), Hampton Inns, Inc., Hilton Hotels Corporation and Promus Hotels, Inc. We affirm.

Matson initiated this action after she was sexually assaulted and set on fire during an attempted robbery in the early hours of October 22, 2003,[1] while on her job as a night clerk at the Peachtree City Hampton Inn. At night, the hotel lobby normally is accessible only by way of a key card system or by the night clerk's remote unlocking of the door. She asserts that the perpetrator was able to gain entry to the lobby because the front entrance door would not lock properly and she could not control his access. Matson suffered physical injuries and sought psychological counseling as a result of the attack.

Matson brought suit against various entities that she asserts were affiliated with the Peachtree City Hampton Inn or were otherwise responsible for the faulty operation of the sliding doors. She states that at the time of the attack, an entity named Hersha Management operated the hotel, after purchasing it on April 21, 2003, and that entity was her employer. An attachment to the Franchise License Agreement indicates that the licensee, or franchisee, for the hotel was New England Management Company by

---

[1] Matson cites this date in her affidavit. But Hilton, Hampton Inn and Promus assert that the attack actually occurred in the early morning hours of October 23, relying upon the assertion in her complaint.

Hersha Hospitality, L.P.[2] However, Matson did not name any Hersha-related entity in her lawsuit.

Promus, a subsidiary of Hilton, is the named licensor, or franchisor, on the attachment to the franchise agreement, which agreement governed the operation of the hotel as a Hampton Inn. The agreement indicates that Promus is a subsidiary of Hilton, which authorized Promus to grant franchises to operate under the brand name Hampton Inn. The franchise agreement provides that a system exists for the operation of the hotel under the licensed brand name of Hampton Inn (the "System"). Matson asserts that Hilton and Hampton Inn maintain "ownership" of the System, which includes "standards, specifications and policies for construction, furnishing, operation, appearance and service of the Hotel." But the franchise agreement provides that Promus, as franchisor, has the authority to designate elements included in the System, and to modify, alter or delete these elements at its "sole discretion."

Attached to the franchise agreement is a document indicating that "Dan Phipps"[3] performed an inspection of the hotel on April 10, 2003 and prepared a "Hilton Hotels Corporation Product Improvement Report" (the "Report"), a kind of punch list setting out renovations and maintenance needed on the hotel property. The recommended modifications included the installation of automatic electric sliding entry doors, and the form indicates that these modifications were required to be completed by October 17, 2003, one week before Matson was attacked. Attachment B-1 to the agreement contains the same deadline for renovations, although the form indicates that the deadline may be changed by written permission of Promus at its discretion. Attachment A to the franchise agreement, entitled "Performance Conditions: Change of Ownership" indicates that Promus, as franchisor, retained right of approval for any architect, designer, general contractor or major subcontractors hired to complete the renovation work indicated on the Report.

Matson contends based upon this documentation and the April 10 inspection that Hilton, Hampton Inn and Promus (herein sometimes referred to collectively as the "Hotel defendants") undertook the duty to ensure that the sliding doors were properly installed, but failed to fulfill that duty. She asserts that these companies controlled the time, manner and method of the installation of the faulty doors,

---

[2] We will refer to Hersha Management, New England Management Company and Hersha Hospitality, L.P. collectively herein as "Hersha."

[3] We found no evidence in the record identifying Dan Phipps or explaining the relationship, if any, between Dan Phipps and any of the defendants.

and this control established liability on their part for the injuries she sustained when her attacker was able to gain entry to the hotel lobby.

Hilton, Hampton Inn and Promus moved for summary judgment, arguing that all claims against them arose under the franchise agreement, and under that agreement the franchisee, as owner and operator of the hotel, was responsible for maintaining the physical property. Hilton and Hampton Inn also assert that they were neither owner, operator nor the franchisor of the hotel and thus could not be liable. Promus, which was the franchisor, argued that because it was neither the owner nor the operator of the hotel, it could not be liable.

In its order addressing various motions filed by the parties, the trial court determined that Matson had failed to properly add Promus as a party to the litigation and that it should be dismissed. The court also denied Matson's motion to add Promus to the lawsuit. The trial court further granted summary judgment to Hilton and Hampton Inn, finding that neither company was vicariously liable for the acts of a franchisee, citing *McGuire v. Radisson Hotels Intl.*, 209 Ga. App. 740 (435 SE2d 51) (1993). The trial court found that Hilton and Hampton Inn were not franchisors and Promus, who was the franchisor, had not obligated itself by its acts or conduct to pay for the acts of the franchisee. The trial court noted that "the parties have expressly agreed to limit their relationship to that of a principal and independent contractor, thereby entitling the Defendant Hotels to judgment as a matter of law."

Matson also appeals the grant of summary judgment to the Noble defendants. Those defendants asserted, and the trial court found, that other entities actually owned the hotel and that the two named Noble defendants have never been affiliated with it. The trial court also determined that, in any event, the Noble defendants could not be liable for an assault that occurred six months after any affiliation with the hotel would have ended.

Before turning to the merits of Matson's liability claims under the franchise agreement, we will first address her enumerations specifically addressing whether the Noble defendants and Promus were properly named as defendants in her lawsuit.

1. Matson argues that the trial court erred in granting summary judgment to the Noble defendants because these defendants are part of a common enterprise of companies that shared ownership of the hotel until April 21, 2003. She also takes issue with the trial court's order denying her motion to add other entities in the alleged enterprise as defendants. She asserts that these defendants bear some liability for the October 22, 2003 assault, which occurred six months after Hersha became the franchisee.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of

law. OCGA § 9-11-56 (c)." *Cope v. Enterprise Rent-A-Car*, 250 Ga. App. 648, 649 (551 SE2d 841) (2001). In order to establish her claim for negligence, Matson would have to prove, inter alia, that the Noble defendants had "[a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm" and "a breach of this standard." (Citation omitted.) Id.

The Noble defendants contend, however, that they never had any affiliation with the hotel, and thus could have no duty toward Matson and no liability for her injuries. Mark K. Rafuse, who at the pertinent time was Chief Financial Officer of both Noble defendants, provided an affidavit stating that neither Noble Investment Group nor Noble Investment Group Georgia had any affiliation with the Peachtree City Hampton Inn, although both entities were in the business of managing hotels.

Instead, at various times prior to April 21, 2003, Rafuse avers that three other "Noble" entities had some level of ownership or operational or managerial responsibilities in connection with the hotel. Noble Investment-RMD, LLC actually owned and operated the hotel until April 20, 2000 when it sold the hotel to an unrelated business, 5944 Peachtree Associates, LLP. Another distinct Noble business, Noble Investments-Leaseback South, LLC ("Noble Lease-back"), entered into a three-year lease of the premises at that time in order to operate the hotel. At the same time, yet another entity, Noble Investment Group, Ltd. n/k/a Noble Shah Investment Group, Ltd. ("Noble Shah"), entered into an agreement with Noble Leaseback to manage the hotel.

In April 2003, Noble Leaseback elected not to renew the lease, at which time Hersha, which Rafuse asserts is unrelated to any of the Noble entities, took over all operations and management of the hotel. Noble Leaseback's management agreement with Noble Shah terminated at the same time. Thus, Rafuse concludes that after April 20, 2000, no Noble-related entity had ownership of the hotel, and after April 20, 2003, no Noble-related entity had control over any daily operations or management of the facility.

Although Matson proffers information in her brief to allegedly demonstrate that all of the Noble entities, whether named in this lawsuit or not, are a part of a common enterprise that has "close ties" to Hersha, she provides no record citations to support these assertions. And this Court is not obligated to search the record on her behalf. *Austin v. Moreland*, 288 Ga. App. 270 (653 SE2d 347) (2007); Court of Appeals Rule 25 (c) (3) (i). As the trial court indicated, therefore, Matson has offered no evidence to refute Rafuse's affidavit.

Thus, the only evidence shows that all the Noble entities severed ties with the hotel at least six months prior to the incident at issue. We agree with the trial court that under these circumstances, Matson

cannot prove liability against the Noble defendants, who were never connected with the hotel, or the other Noble entities, who had no connection to the hotel for at least six months prior to the incident. Moreover, Matson admits in her appellate briefing that the renovation work on the sliding doors, as required by the Report, was completed prior to her assault. Because the Noble entities had no responsibility for the renovation, Matson cannot prove that they would be responsible for any alleged negligence in performing that work. Accordingly, we agree with the trial court that Matson will be unable to establish that either the Noble defendants, or any of the unnamed Noble entities, had a duty to her in October 2003 that they somehow breached.

Accordingly, we find no error in the trial court's grant of summary judgment to the two named Noble defendants or in the denial of Matson's motion to add the other Noble entities as defendants.

2. We next consider whether the trial court erred in denying Matson's motion to add Promus as a defendant. "A trial court's decision as to whether a party should be added to a lawsuit lies in the court's sound discretion and will be overturned on appeal only upon a showing of abuse of that discretion." (Citation and punctuation omitted.) *Rasheed v. Klopp Enterprises*, 276 Ga. App. 91, 92 (1) (622 SE2d 442) (2005).

The assault in this case occurred on October 22, 2003, and Matson filed her original complaint on October 19, 2005, three days prior to the expiration of the applicable two-year statute of limitation for personal injury. OCGA § 9-3-33. Matson did not name Promus as a defendant until she filed an amended and recast complaint on February 17, 2006, after the limitation period expired. She did not seek leave of court to add Promus to the lawsuit at that time. The law is clear that "[i]n order for an additional party to be added to an existing suit by amendment pursuant to OCGA § 9-11-15, leave of court *must* first be sought and obtained pursuant to OCGA § 9-11-21." (Footnote omitted; emphasis in original.) *Valdosta Hotel Properties v. White*, 278 Ga. App. 206, 209 (1) (628 SE2d 642) (2006).

Promus moved for summary judgment on April 4, 2006 on the grounds that it was not served until after the statute of limitation expired and that Matson had not asked for leave to add the corporation as a defendant. Two months later, Matson filed her motion for leave to add Promus as a party defendant. The factors a trial court must consider in ruling on such a motion include "whether the new party will be prejudiced thereby and whether the movant has some excuse or justification for having failed to name and serve the new party previously." (Citation, punctuation and footnote omitted.) *Dean v. Hunt*, 273 Ga. App. 552, 552-553 (615 SE2d 620) (2005). Matson bears the burden of persuasion on her motion, id. at 553, n. 1, and she

can meet this burden by satisfying the statutory requirements for the relation back of an amendment under OCGA § 9-11-15 (c). This Court has held that where a plaintiff can meet those requirements, "denying a motion for leave to amend the complaint to add a defendant is an abuse of the trial court's discretion." (Citation omitted.) *Rasheed v. Klopp Enterprises*, 276 Ga. App. at 92 (1).

Accordingly, we must examine the requirements of OCGA § 9-11-15 (c), which provides that

> a claim against a newly added party relates back if three elements are met: [(1)] the claim arises out of the same facts and circumstances as the original claim; [(2)] the new party has received sufficient notice prior to the running of the statute of limitation of the institution of the action so as to avoid prejudice to his defense on the merits; and [(3)] the new party knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

(Footnote omitted.) *Crane v. State Farm Ins. Co.*, 278 Ga. App. 655, 656-657 (2) (629 SE2d 424) (2006). "The plain wording of the statute shows that the required notice is notice of the institution of the action (i.e., notice of the lawsuit itself) and not merely notice of the incidents giving rise to such action." (Punctuation and footnote omitted.) *McNeil v. McCollum*, 276 Ga. App. 882, 886 (1) (625 SE2d 10) (2005).

Promus has the burden on its motion for summary judgment to show that Matson cannot meet at least one of the OCGA § 9-11-15 ("Rule 15") (c) requirements. *McNeil v. McCollum*, 267 Ga. App. at 886 (1). But Matson, "[a]s the party seeking to benefit from the relation back provisions of OCGA § 9-11-15 (c) to avoid the bar of the statute of limitation," had the burden on her own motion to establish that all the Rule 15 (c) requirements were met. (Footnote omitted.) Id.

In opposing Matson's motion, Promus asserted that it did not receive timely notice of the lawsuit. The Hotel defendants' attorney asserted at the hearing on these motions that none of the Hotel defendants was served within the limitation period.[4] Promus, in fact, was not served until months later, after it was named as a defendant in the February 17, 2006 amended complaint.

Matson countered Promus's arguments by asserting that notice to Hilton was sufficient to give actual notice to Promus. She notes that Hilton's insurer failed to inform her attorney that Promus was the

---

[4] Hilton and Hampton Inn were served within a few days after the limitations period ran, and their attorney conceded that this was sufficient to bring them into the lawsuit.

actual franchisor, and she notes that Secretary of State records reflect that Hilton and Promus are closely related. She also asserts, without record support, that at some point Hilton and Hampton Inn were willing to substitute Promus as the defendant in their place, but, in any event, her attorney stated that he would not agree to such a substitution.

Applying the Rule 15 factors, there is no question that the claim against Promus arises out of the same facts and circumstances as the claims against Hilton and Hampton Inn. But Promus is correct that none of the Hotel defendants were served within the limitation period, although the service upon Hilton and Hampton Inn was sufficient to give them timely notice. *Rich's, Inc. v. Snyder*, 134 Ga. App. 889, 892 (1) (216 SE2d 648) (1975). Nevertheless, this service cannot be imputed to Promus unless there is evidence that Promus is closely intertwined with at least one of those corporations. See, e.g., *Tanner's Rome v. Ingram*, 236 Ga. App. 275 (511 SE2d 617) (1999); *Ford v. Olympia Skate Center*, 213 Ga. App. 600 (445 SE2d 362) (1994).

The only admissible evidence in the record addressing the relationship between Promus and those companies, however, is the fact that Promus is a subsidiary of Hilton. Matson relies upon uncertified copies of computer printouts her attorney apparently obtained from the Secretary of State's website in an attempt to establish a deeper connection between the corporations. But those records are not evidence. To be admissible, such records must, at a minimum, contain a certificate or attestation of a public officer.[5] OCGA § 24-7-20. Accordingly, we cannot consider those documents because they are not properly authenticated. Cf. *Payne v. Mimms Enterprises*, 234 Ga. App. 199 (505 SE2d 520) (1998); *Tipton v. State*, 213 Ga. App. 764 (445 SE2d 860) (1994).

Although Promus was ultimately represented by the same counsel as Hilton and Hampton Inn, that fact is insufficient to impute knowledge of the action to Promus, because there was no evidence that the counsel represented Promus at the time those corporations were served. *McNeil v. McCollum*, 276 Ga. App. at 888 (2). Nor does the pre-litigation correspondence with Hilton's insurer, cited by Matson, affect our analysis as there is no evidence that Promus used

---

[5] Instead, the computer printouts were attached to an affidavit from Matson's attorney reciting facts pulled from the unauthenticated documents. The Hotel defendants asserted at the hearing that the entire affidavit was inadmissible as it is "nothing but hearsay, inadmissible evidence because it's not from his own personal knowledge." Thus, they preserved any objection to this purported evidence.

the same insurance carrier and, in any event, nothing in the correspondence constituted notice of the institution of the lawsuit. Accordingly, we find that the mere fact that Promus is a subsidiary of Hilton is insufficient, in and of itself, to impute Hilton's notice of the lawsuit to Promus. See generally *Khawaja v. Lane Co.*, 239 Ga. App. 93, 95-96 (2) (520 SE2d 1) (1999); *American Transp. v. Thompson*, 218 Ga. App. 54, 55 (460 SE2d 298) (1995).

We cannot say, therefore, that the trial court abused its discretion in denying Matson's motion for leave to add Promus as a party. Although the trial court denied the motion on other grounds, "a ruling right for any reason will be affirmed [on appeal]." (Citations omitted.) *Harper v. Mayor & Aldermen of Savannah,* 190 Ga. App. 637, 638 (1) (380 SE2d 78) (1989).

3. Matson raises several enumerations contesting the trial court's grant of summary judgment to Hilton and Hampton Inn. She contends that Hilton and Hampton Inn are liable as franchisors for her injuries because they negligently performed the obligations under the franchise agreement to supervise the renovations listed in the Report. In particular, she argues that in Attachment A to the franchise agreement, Hilton and Hampton Inn undertook the responsibility to oversee and approve all renovations to the hotel, including the sliding doors, and further under the agreement retained the right to inspect the property. Thus, she asserts that the corporations are directly liable for her injuries based upon their negligent performance of these assumed obligations or, in the alternative, are somehow vicariously liable under the franchise agreement for the actions of the franchisee.

The primary flaw in this argument, however, is that neither Hilton nor Hampton Inn is a party to the franchise agreement. Rather, the agreement states that the licensor, or franchisor, is identified in Attachment B to the contract. Both Attachments B-1 and B-3 to the agreement specifically name Promus as the licensor. A separate Guarantee of License Agreement, which recites that it is a pre-condition to the franchise agreement, also identifies Promus as the licensor. And Ted C. Raynor, Hilton's Vice President and Senior Counsel, averred that Hampton Inn is a wholly-owned subsidiary of Hilton, and that neither corporation has any contractual relationship with the hotel. Rather, Hilton's subsidiary, Promus, is the franchisor. Matson offered no evidence to the contrary.

Thus, on the face of the agreement, Promus is the only party who could be charged with the obligations and privileges outlined in the franchise agreement, and the only entity potentially liable under Matson's theory of direct or vicarious liability. Although Matson

attempts to read Hilton and Hampton Inn into the franchise agreement as franchisors, this attempt conflicts with the clear language of the contract.

"To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim." (Citation omitted.) *Cope v. Enterprise Rent-A-Car*, 250 Ga. App. at 649. Accordingly, we find that both Hilton and Hampton Inn established that nothing in the record indicates that they undertook a duty, by contract or otherwise, to control the renovations at the hotel or to ensure that they were done properly, and Matson failed to establish that either Hilton or Hampton Inn is directly liable to her. Similarly, we find that Matson failed to establish that Hilton or Hampton Inn could be vicariously liable for any negligence on the part of the franchisee as they were not parties to the franchise agreement. Nor was there any other evidence of an agency relationship between those companies and the franchisee as defined in *McGuire v. Radisson Hotels Intl.*, 209 Ga. App. at 742-743 (1).

Nevertheless, Georgia law recognizes that as a parent corporation, Hilton could be liable for any negligence on the part of Promus under any one of three intertwined theories: (1) piercing the corporate veil; (2) apparent or ostensible agency; or (3) joint venture. *Kissun v. Humana, Inc.*, 267 Ga. 419, 420 (479 SE2d 751) (1997). Matson's claims do not rely upon any of these theories of recovery. Although Matson makes a conclusory allegation in her appellate pleadings that Promus acted as Hilton and Hampton Inn's agent, she cites no evidence in the record to support such an allegation. For example, Matson points to no evidence[6] outlining the contractual relationship between Hilton and Promus, no evidence to establish the ownership of Promus,[7] and nothing beyond mere speculation as to whether or how Promus acted as Hilton's agent in supervising the System. Id.

The only evidence as to the relationship between Hilton and Promus is the fact that Promus is Hilton's subsidiary. And the mere fact of this relationship is insufficient to raise a jury issue under any of these theories:

---

[6] Matson asserts that the motions for summary judgment in this case were premature as discovery had not been completed. But the record does not reflect that Matson had outstanding motions to compel information that Hilton and Hampton Inn had not provided or that she moved for a continuance pending any such unresolved discovery matters. Accordingly, she has no ground to raise such matters on appeal. See *Mallard v. Forest Heights Water Works*, 260 Ga. App. 750, 752 (2) (580 SE2d 602) (2003).

[7] Although Matson describes Promus as a "wholly-owned subsidiary," she points to no evidence in the record to support that assertion.

There is no question that under appropriate circumstances a parent corporation can set up a subsidiary to promote the parent's purposes yet maintain a separate identity from the subsidiary and avoid liability for the subsidiary's actions. A parent/subsidiary relationship does not in and of itself establish the subsidiary as either the alter ego of the parent or as the parent's actual or apparent agent.

(Citations omitted.) *Kissun v. Humana, Inc.*, 267 Ga. at 421.

Accordingly, the trial court properly granted summary judgment to Hilton and Hampton Inn.[8]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 29, 2007.

*Hilley & Frieder, Ronald L. Hilley, Michael T. Hammond,* for appellant.

*Hawkins & Parnell, Michael J. Goldman, Wayne W. Dempsey, Jr., Swift, Currie, McGhee & Hiers, Lynn M. Roberson,* for appellees.

---

[8] Given our holding in Division 2, we need not address the trial court's finding that Promus was also entitled to summary judgment on the merits, and we expressly do not reach the issue of whether Promus could be liable under the franchise agreement or for the negligent performance of any duties it may have undertaken.