A09A0585, A09A0586, A09A0587. ENDURACARE THERAPY MANAGEMENT, INC. v. DRAKE et al. (three cases).
A09A0588, A09A0589, A09A0590. BRENTWOOD NURSING, LLC et al. v. DRAKE et al. (three cases).
(681 SE2d 168)

DOYLE, Judge.

These related appeals arise from claims brought by Henry Drake, former husband of Dorothy Drake, deceased, and Mamie Bryant, administratrix of Dorothy's estate, based on Dorothy's death while she was a resident in a nursing home. In Case No. A09A0585, defendant EnduraCare Therapy Management, Inc. ("EnduraCare") appeals from an order entering a default judgment against it, and, in Case Nos. A09A0586 and A09A0587, EnduraCare appeals from orders denying its post-trial motion and requiring it to file a supersedeas bond on appeal. In Case Nos. A09A0588, A09A0589, and A09A0590, defendants Brentwood Nursing, LLC, and Brentwood Healthcare, LLC (collectively "Brentwood") also appeal from the orders entering default judgment against an alleged Brentwood trade name and denying their post-trial motion. The cases share a common, undisputed history, and we have consolidated them for review.

Henry's wife Dorothy died in 2003 while she was a resident in a nursing home referred to in the pleadings as CLC of Jesup ("CLC"). Henry and the administratrix of Dorothy's estate (collectively

[5] See *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005).
[6] *Aceves v. State*, 296 Ga. App. 596, 597 (675 SE2d 516) (2009).

"Drake") filed suit against CLC and fourteen other individuals and entities whom Drake alleged "owned or controlled ownership interests in CLC and are responsible for any torts committed by CLC or its agents or employees." Drake listed EnduraCare among the owner entities, but Brentwood was not listed. Drake later successfully petitioned the trial court to add Brentwood as a proper party based on Drake's assertion that Brentwood operated the nursing home under a trade name. Though Brentwood later disputed that assertion and notice of the lawsuit, the trial court deemed service proper by virtue of service on a Brentwood trainee temporarily located at the nursing home. Brentwood failed to respond to the complaint.

EnduraCare was served but also failed to respond to the complaint.[1] The trial court found EnduraCare and CLC to be in default and scheduled a hearing on damages, at which EnduraCare also failed to appear. Drake then voluntarily dismissed Brentwood without prejudice (Brentwood now appeals based on the default judgment against an alleged trade name). Based on the unchallenged evidence introduced at the damages hearing, which included testimony about Dorothy's end-of-life suffering, the value of her life, the loss to Henry, the falsification of nursing home medical records, and a pattern of neglected patients, the trial court in November 2006 entered a judgment against EnduraCare and CLC for $2,000,000 in compensatory damages and $5,000,000 in punitive damages. Eight days later, EnduraCare unsuccessfully filed a motion seeking a new trial and to set aside the default judgment.[2] Brentwood also unsuccessfully filed within 30 days of the judgment a post-trial motion challenging the default as to Brentwood or related entities.

### Case Nos. A09A0585, A09A0586, A09A0587

1. Because EnduraCare filed a timely notice of appeal directly challenging the trial court's order entering the default judgment, we first address the correctness of that order. EnduraCare contends that the trial court erred in entering the default judgment against it because the complaint itself demonstrated that no claim existed against EnduraCare. Specifically, EnduraCare argues that the complaint shows that EnduraCare's liability, if any, was necessarily

---

[1] In the trial court, EnduraCare thoroughly but unsuccessfully litigated the issue of whether service was proper. EnduraCare does not challenge that ruling on appeal.

[2] EnduraCare also filed a timely notice of appeal from the November 2006 order, which appeal was docketed in this Court in Case No. A09A0585. Later, the trial court denied EnduraCare's post-trial motion and then temporarily vacated that order in light of new evidence that EnduraCare was not properly served, but the court then reinstated its original judgment after further new evidence was produced. The orders vacating and reinstating the November 2006 judgment are not germane to this appeal.

premised on abuses of the corporate form that the complaint did not allege. We agree.

Under OCGA § 9-11-55 (a), the effect of a default judgment is judgment to the plaintiff "as if every item and paragraph of the complaint or other original pleading were supported by proper evidence. . . ." We have interpreted this provision to mean that

> the default operates to admit only the well-pled *factual* allegations of the complaint and the fair inferences and conclusions of fact to be drawn from those allegations. . . . It is axiomatic that a default does not result in the admission of allegations that are not well-pled or that are the result of forced inferences. The failure to answer or to appear at trial serves as an admission of the facts alleged in the complaint, but not of the conclusions of law contained therein. *So while a default operates as an admission of the well-pled factual allegations in a complaint, it does not admit the legal conclusions contained therein. A default simply does not require blind acceptance of a plaintiff's erroneous conclusions of law.* Nor does a default preclude a defendant from showing that under the facts as deemed admitted, no claim existed which would allow the plaintiff to recover.[3]

Here, Drake's complaint alleged that EnduraCare was one of fourteen individuals or entities that had an ownership interest in CLC, a domestic corporation. The complaint then provided detailed allegations of CLC's negligent treatment of Dorothy and asserted that the mistreatment of Dorothy was part of a pattern of malfeasance by CLC and its agents and employees (with no mention of EnduraCare or other owners). In support of Drake's claim for punitive damages, the complaint made conclusory allegations that all defendants (specifically including EnduraCare) acted intentionally and wilfully and that the defendants "knew, or in the exercise of reasonable care, should have known that its staff and employees were negligently and/or abusing [sic] the residents of its nursing home, including Dorothy Drake."

Nowhere in the complaint did Drake make a well-pled, factual allegation that EnduraCare itself (or its own agents or employees) actually mistreated Dorothy.[4] Instead, the complaint, on its face,

---

[3] (Punctuation omitted; emphases in original and supplied.) *Fink v. Dodd*, 286 Ga. App. 363, 364-365 (1) (649 SE2d 359) (2007). See *ServiceMaster Co. v. Martin*, 252 Ga. App. 751, 752 (1) (556 SE2d 517) (2001); *Azarat Marketing Group v. Dept. of Administrative Affairs*, 245 Ga. App. 256, 257 (1) (b) (537 SE2d 99) (2000).

[4] Though not relevant to our analysis of the default status, it is undisputed that

YALE LAW LIBRARY

based EnduraCare's alleged liability solely on its status as a corporation with an ownership interest in CLC. However, "[a] parent/subsidiary relationship does not in and of itself establish the subsidiary as either the alter ego of the parent or as the parent's actual or apparent agent."[5] Therefore, Drake has failed to allege anything more than an ownership interest.

It is well settled that owners or shareholders of a corporation "are not personally liable for corporate acts . . . until such time as the corporate veil has been successfully pierced."[6] Even in a case of alleged fraud, the corporation's "shareholders cannot be held accountable for the fraudulent acts of" the underlying corporation, absent some alleged reason to disregard the corporate form.[7] This is because

> corporate liability is not the same as shareholder [or owner] liability. The corporate form protects shareholders by limiting their liability and their direct control over the corporation. Indeed, courts are reluctant to disregard the separate existence of related corporations by piercing the corporate veil, and have consistently given substantial weight to the presumption of separateness. The corporate entity may be disregarded only in exceptional circumstances.[8]

In the face of this presumed separateness, Drake alleged no exceptional circumstances that address the legal distinction between a corporation (CLC) and its owners or shareholders (EnduraCare). Drake does not allege that CLC was an alter ego of EnduraCare; that EnduraCare held out CLC as its agent; that it was engaged in a joint venture; or that EnduraCare abused the corporate form through undercapitalization, domination, or any other means.

For example, the allegations in the complaint do not describe the relationship between CLC and EnduraCare or address the question

> whether [CLC] serves as the alter ego or business conduit of its owner[s] . . . [by showing] that the stockholders' disre-

---

EnduraCare did not have any relationship to the nursing home until four months after Dorothy's death, when EnduraCare entered into a contract with the nursing home to provide certain physical therapy services.

[5] *Matson v. Noble Investment Group*, 288 Ga. App. 650, 659 (3) (655 SE2d 275) (2007).

[6] *Milk v. Total Pay and HR Solutions*, 280 Ga. App. 449, 453 (634 SE2d 208) (2006).

[7] *McKesson Corp. v. Green*, 279 Ga. 95, 98 (2) (610 SE2d 54) (2005).

[8] (Punctuation omitted.) *McKesson Corp. v. Green*, 266 Ga. App. 157, 166 (3) (597 SE2d 447) (2004), affirmed in *McKesson Corp.*, 279 Ga. at 95.

gard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such a unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud.[9]

Thus, taking as true the facts alleged in the complaint, the presumption remains that EnduraCare maintained a separate identity from CLC.

The underlying "corporation is an entity, an existence, irrespective of the persons who own all its stock. [Even t]he fact that one person owns all the stock does not make him and the corporation one and the same person."[10] Thus, without first successfully piercing the corporate veil, treating CLC's torts as the torts of its corporate shareholder would violate the previously stated principle that "shareholders are not personally liable for corporate acts . . . until such time as the corporate veil has been successfully pierced."[11]

Drake's argument that certain conclusory statements made in support of punitive damages sufficiently demonstrated liability on the part of EnduraCare does not change this result. He relies on the following language in the complaint:

> The conduct alleged herein [not involving EnduraCare] demonstrates that defendants and defendant's [sic] employees, agents[,] or servants have repeatedly committed acts of willful and heartless neglect and demonstrated wanton disregard for the life, health, safety[,] and comfort of the residents of its facility, including Dorothy Drake, and is part and parcel of a repetitive pattern of such callous, wanton conduct for which Plaintiff is entitled to recover damages in an amount to be determined by a jury. . . .
>
> The Defendant's [sic] repeated and continuous failure to take such reasonable steps available to them to prevent repetition of these acts, is itself willful, wanton[,] and a reckless disregard and evidences an entire want of care[,] which would raise a presumption of conscious indifference to the consequences. Defendants' heartless conduct is the functional equivalent of the intentional infliction of pain,

---

[9] (Punctuation omitted.) *Derbyshire v. United Builders Supplies*, 194 Ga. App. 840, 844 (2) (a) (392 SE2d 37) (1990) (disregarding corporate form because president and sole shareholder employed various corporations as his alter ego).

[10] *Exchange Bank of Macon v. Macon Constr. Co.*, 97 Ga. 1, 7 (1) (25 SE 326) (1895).

[11] *Milk*, 280 Ga. App. at 453.

cruelty[,] and injury upon helpless victims, including Dorothy Drake. As such, Plaintiff is entitled to recover punitive damages from the Defendants in order to punish, penalize[,] and deter the Defendants from further repetition of the conduct alleged herein above. . . .

Defendants' conduct and the repeated acts and omissions by their agents, employees, supervisors[,] and other staff as outlined above indicates an intention to cause particular harm to Dorothy Drake and to intentionally inflict emotional distress to Dorothy Drake during her entire residency at CLC, and therefore, Plaintiff is entitled to punitive damages not subject to a cap or limit in an amount to be determined by a jury.

After a defendant defaults, we treat as true only the well-pled factual allegations; forced inferences and conclusions of law cannot demonstrate a claim.[12] Thus, these conclusory allegations attempt to support Drake's claim for punitive damages, but, despite EnduraCare's default status, the statements do not in and of themselves form the factual basis for an independent claim against an owner of CLC. They do not show how EnduraCare is liable as an owner of CLC for CLC's negligent treatment of Dorothy.[13] As that theory necessarily fails in the absence of some basis for disregarding the presumed separateness of corporations from their owners, the punitive damages claim fails because "a plaintiff cannot recover punitive damages when the underlying tort claim fails."[14]

As noted above, Drake did allege in support of punitive damages that EnduraCare "knew or should have known" that Dorothy and other nursing home residents were being mistreated. However, this statement likewise fails to address the liability of a corporate owner. Drake does not identify a duty on the part of EnduraCare itself (a separate entity with no alleged relationship to Drake) to ensure that Dorothy was provided a certain level of care.

We construe the language of the pleading according to its literal meaning and giving its words their usual and ordinary significance. Liberal construction of a pleading does not encompass the imputation or engrafting to a claim of a

---

[12] See *Fink*, 286 Ga. App. at 364-365 (1).

[13] Cf. id.

[14] *Lewis v. Meredith Corp.*, 293 Ga. App. 747, 750 (5) (667 SE2d 716) (2008). See also *Grand v. Hope*, 274 Ga. App. 626, 631 (1), n. 33 (617 SE2d 593) (2005) ("when an award of actual damages fails, the award of punitive damages must likewise fail").

> meaning not reasonably deductible or inferable from the explicit language of the pleading.[15]

Merely alleging that CLC, a separate entity, was negligent and one of its shareholders knew or should have known about CLC's negligence does not establish facts sufficient to support the flow of liability from the tortfeasor to the corporate shareholder.

> There is no question that under appropriate circumstances a parent corporation can set up a subsidiary to promote the parent's purposes yet maintain a separate identity from the subsidiary and avoid liability for the subsidiary's actions. A parent/subsidiary relationship does not in and of itself establish the subsidiary as either the alter ego of the parent or as the parent's actual or apparent agent.[16]

"If a defendant does not owe a plaintiff any legal duty which the defendant has neglected to perform, no action can be maintained against the defendant for negligence. Actionable negligence does not exist in the absence of the breach of some legal duty."[17]

In light of the presumed separateness of corporate entities from their shareholders and owners, and because of the absence of any alleged exceptional circumstances that justify ignoring the corporate form,[18] the trial court erred in entering a default judgment against EnduraCare.[19]

2. In light of our holding in Division 1, EnduraCare's appeals in Case Nos. A09A0586 (appealing the denial of its post-trial motion) and A09A0587 (appealing the requirement to file supersedeas bond) are moot.

### Case Nos. A09A0588, A09A0589, A09A0590

3. In each of these related cases, Brentwood also appeals from the trial court orders entering default judgment against "CLC of

---

[15] (Citation and punctuation omitted.) *Standridge v. Spillers*, 263 Ga. App. 401, 405 (2) (587 SE2d 862) (2003).

[16] *Matson*, 288 Ga. App. at 659 (3).

[17] (Punctuation omitted.) *Washington v. Combustion Engineering*, 159 Ga. App. 555, 557 (284 SE2d 61) (1981). See *ServiceMaster*, 252 Ga. App. at 756 (2) (b).

[18] See *McKesson Corp.*, 266 Ga. App. at 166 (3) (listing exceptional circumstances recognized in Georgia).

[19] See *Fink*, 286 Ga. App. at 366 (1) (a) (reversing default judgment where complaint claiming wrongful termination failed to overcome presumption in Georgia of at-will employment). See also *Yukon Partners v. Lodge Keeper Group*, 258 Ga. App. 1, 6 (572 SE2d 647) (2002) ("a member of a limited liability company . . . is considered separate from the company and is not a proper party to a proceeding by or against a limited liability company, solely by reason of being a member of the limited liability company . . .") (punctuation omitted).

Jesup/Jesup Healthcare Center" and denying Brentwood's post-trial motion.[20] Drake successfully asserted below that "Jesup Healthcare Center" was a trade name of Brentwood, and because "[a] corporation conducting business in a trade name may sue or be sued in the trade name,"[21] Brentwood was a proper party.[22] However, in light of our holding in Division 1, we must likewise reverse the trial court's entry of default judgment as to "Jesup Healthcare Center," which was named in the complaint in the same manner and with the same status as EnduraCare.[23] The entities other than "CLC of Jesup" named in Drake's complaint (including "Jesup Healthcare" and "Healthcare of Jesup") were named as entities only with ownership (not operational) interests in CLC, which was defined as a domestic corporation. Therefore, taking as true the complaint's well-pled factual allegations, we conclude that the trial court erred in entering the default judgment against the shareholder entities listed, including those that Brentwood allegedly used as trade names, in the absence of some alleged theory of shareholder liability. Accordingly, for the same reasons set forth in Division 1, we conclude that the trial court erred in entering default judgment against "Jesup Healthcare" and "Healthcare of Jesup," both alleged trade names of Brentwood.

4. Brentwood's remaining enumerations are moot.

*Judgments reversed and cases remanded. Blackburn, P. J., and Adams, J., concur.*

DECIDED MAY 20, 2009 —
RECONSIDERATION DENIED JULY 9, 2009.

*Bondurant, Mixson & Elmore, Jill Pryor, J. Alvin Leaphart, Charles C. Stebbins*, for appellant (case nos. A09A0586 & A09A0587).

---

[20] As we already ruled in Brentwood's discretionary application for appeal, the default judgment was directly appealable in light of the defendants' timely notices of appeal from the default judgment. See *Martin v. Williams*, 263 Ga. 707, 709-710 (3) (438 SE2d 353) (1994); OCGA § 5-6-34 (d).

[21] *Sam's Wholesale Club v. Riley*, 241 Ga. App. 693, 696 (2) (a) (527 SE2d 293) (1999). For the same reason, Brentwood does not, as Drake asserts, lack standing to challenge the judgment.

[22] For this reason, Brentwood does not lack standing to bring this appeal. See *Weikert v. Logue*, 121 Ga. App. 171, 172 (2) (173 SE2d 268) (1970).

[23] Drake amended his complaint to substitute the name "Jesup Healthcare Center" for "Jesup Healthcare" and "Healthcare of Jesup." The amendment also alleged that Brentwood *operated* the nursing home under the "Jesup Healthcare Center" trade name. To the extent that this created a new allegation that Brentwood was the operator of the nursing home (and not the owner of the nursing home operator), this allegation is not deemed admitted on default. Even in default, "[n]o responsive pleadings are required to an amendment. Averments in a pleading to which no responsive pleading is required are considered as denied." (Citations and punctuation omitted.) *Shields v. Gish*, 280 Ga. 556, 557 (1) (629 SE2d 244) (2006).

*Quirk & Quirk, Kevin E. Quirk, Kenneth R. Carswell*, for appellants (case nos. A09A0588, A09A0589 & A09A0590).
*Gerald W. Bassett, Charles M. Cork III*, for appellees.