310 Ga. 728
FINAL COPY

S20G0584. OCONEE COUNTY v. CANNON et al.

PETERSON, Justice.

Ronald and Christy Cannon sued Oconee County after a vehicle chase initiated by an Oconee County sheriff's deputy ended in their daughter's death. The trial court granted the County's motion for summary judgment, holding that (1) the Sheriff of Oconee County in his official capacity, not the County, was liable for the deputy's actions; and (2) the Cannons could not substitute the Oconee County Sheriff in his official capacity as the defendant in place of Oconee County because the statute of limitations had expired and the relation-back doctrine embodied in OCGA § 9-11-15 (c) did not apply. The Court of Appeals affirmed the trial court's determination as to the proper defendant but reversed its ruling that relation-back did not apply. See *Cannon v. Oconee County*, 353 Ga. App. 296 (835 SE2d 753) (2019). We granted the County's petition for a writ of certiorari to review the Court of Appeals's

reversal. We hold that the application of the relation-back doctrine depends on whether the proper *defendant* knew or should have known that the action would have been brought against him but for the plaintiff's mistake, not on what the *plaintiff* knew or should have known and not on whether the plaintiff's mistake was legal or factual. We vacate the decision of the Court of Appeals and remand with direction to remand to the trial court for application of the proper standard.

1. *Background.*

On September 14, 2015, Deputy Golden Sanders with the Oconee County Sheriff's Office attempted to stop a Jeep SUV in which Jessica Cannon was a passenger. The SUV accelerated and a brief high-speed pursuit ensued, ending when the SUV collided with a tractor-trailer. Both the driver of the SUV and Jessica were killed in the crash. The Oconee County Sheriff, Scott Berry, met with Jessica's parents, Ronald and Christy Cannon, to inform them of their daughter's death.

The Cannons sent a timely presentment of their claim to

2

Oconee County, the Oconee County Sheriff's Office, and other government officials. (The deputy's patrol car was insured through Oconee County's insurance policy.) In January 2017, the Cannons filed a wrongful death suit naming Oconee County as the lone defendant. The complaint alleged that at the time of the accident, Deputy Sanders "was acting in the course and scope of his employment as a police officer with the Oconee County Sheriff's Office." The County admitted that allegation in its answer. The complaint also alleged that the County was liable for Deputy Sanders's acts and omissions under the doctrine of respondent superior. The County responded with a general denial of that allegation. The County's answer did not raise an improper-party defense, nor did it specifically assert that the County could not be held liable because it was not Deputy Sanders's employer.

In discovery, the County indicated that representatives of the Oconee County Sheriff's Office were "involved in gathering the information to answer Plaintiffs' discovery requests." The Cannons made multiple requests for documents relating to "your employees,"

3

and the County responded to several of those requests by providing information regarding employees of the Sheriff's Office. The Cannons deposed several employees of the Sheriff's Office, including Deputy Sanders and his supervisor. In July 2018, after the County designated Sheriff Berry as its Rule 30 (b) (6) deponent, see OCGA § 9-11-30 (b) (6), the Cannons deposed the Sheriff; that deposition served as both the County's Rule 30 (b) (6) deposition and the Sheriff's personal deposition.

During the litigation, Sheriff Berry sent a letter to counsel for the Cannons regarding an open records request they had sent to the Sheriff's Office requesting communications between the Sheriff's Office and the law firm representing the County. In his letter, Sheriff Berry invoked the attorney-client privilege, stating that communications between the County or Sheriff's Office and the County's counsel were privileged communications, and that Terry Williams, counsel for the County, not only represented the County in the present case but "also provides legal representation and advice to the Oconee County Sheriff's Office." The letter repeatedly

4

referred to Terry Williams as "our attorney."

In August 2018, the County filed a motion for summary judgment, arguing among other things that Deputy Sanders was an employee of the Oconee County Sheriff's Office, not the County, and thus the County could not be held vicariously liable for the deputy's alleged negligence. The Cannons then submitted a motion to substitute Sheriff Berry in his official capacity as the defendant in place of the County under OCGA § 9-11-15 (c), the relation-back statute, in the event the trial court found him, and not the County, to be the proper defendant.

The trial court granted the County's motion for summary judgment, concluding that the County could not be held vicariously liable for Deputy Sanders's actions because deputies are employees of the Sheriff, and the Sheriff's Office is independent from the County. The trial court also denied the Cannons' motion to substitute. It found that OCGA § 9-11-15 (c) (2) was not satisfied because the Cannons were aware of Sheriff Berry's existence and knew that the Oconee County Sheriff's Office was Deputy Sanders's

employer; thus, as a matter of law, "there could be no mistake concerning the identity of Sheriff Berry" as a proper party. The trial court also found that there was "no evidence that Sheriff Berry had or should have had knowledge" that the Cannons made a mistake regarding his identity.

The Court of Appeals affirmed the trial court's grant of summary judgment to the County[1] but reversed the trial court's

---

[1] The Cannons argued that the lawsuit was governed by OCGA § 36-92-1 et seq., which waives the sovereign immunity of a "local government entity" for a loss arising out of the negligent use of a covered motor vehicle, and that they could not sue Sheriff Berry in his official capacity because sheriffs' offices were not included in the definition of "local government entity." See OCGA § 36-92-1 (3) (defining "local government entity" as "any county, municipal corporation, or consolidated city-county government of this state"). The Cannons also argued that suing a sheriff in his official capacity was the same as suing the county where the sheriff was employed. The Court of Appeals concluded that a county cannot be held vicariously liable for actions of deputies and rejected the Cannons' contention based on its holding in *Davis v. Morrison*, 344 Ga. App. 527, 531 (1) (810 SE2d 649) (2018) (holding the "term 'local government entity' should [not] be construed so narrowly as to exclude sheriff's offices, which though separate from a county itself, nevertheless, clearly perform governmental services on a local level." (citation and punctuation omitted)). See *Cannon*, 353 Ga. App. at 299-300 (1). The Court of Appeals acknowledged that *Davis* was decided after the statute of limitations expired in this case. See *Cannon*, 353 Ga. App. at 299 (1) n.3. We did not grant certiorari to review the holding in *Davis*. At least some Justices have since questioned the correctness of *Davis*'s holding on this issue. See *Mendez v. Moats*, 310 Ga. 114 (____ SE2d ____) (2020) (Nahmias, P. J., and Bethel, J., concurring).

denial of the Cannons' motion to substitute Sheriff Berry, in his official capacity, as a party defendant. See *Cannon*, 353 Ga. App. 296. In determining that the Cannons could substitute Sheriff Berry after the expiration of the statute of limitations, the Court of Appeals relied on the United States Supreme Court's interpretation of the federal relation-back rule (Rule 15 (c) of the Federal Rules of Civil Procedure) set forth in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (130 SCt 2485, 177 LE2d 48) (2010). The Court of Appeals concluded that "the Cannons made a deliberate but mistaken choice to sue the County" based on their misunderstanding regarding the proper party to sue under the applicable statute, and that Sheriff Berry should have known he would be the party sued but for the Cannons' mistake because he and his office coordinated with the County to defend the suit before the statute of limitations expired. See *Cannon*, 353 Ga. App. at 302-303 (2). The Court analogized the Cannons' case to Georgia cases prior to *Krupski* such as *Fontaine v. Home Depot, Inc.*, 250 Ga. App. 123 (550 SE2d 691) (2001), where plaintiffs were allowed to substitute one corporate defendant for

7

another related entity after the statute of limitations expired, and distinguished those situations from cases in which the plaintiff "sought to add *individual* defendants who had no reason to believe that the suit might be brought against them." *Cannon*, 353 Ga. App. at 303 (2) (emphasis in original). We issued a writ of certiorari to consider whether the Court of Appeals properly relied on *Krupski*.

As we explain below, although our analysis differs from that of the Court of Appeals, we also conclude that the United States Supreme Court's interpretation in *Krupski* of the federal rule upon which our own relation-back statute is modeled offers the best textual interpretation of OCGA § 9-11-15 (c). We thus agree with the Court of Appeals that the Cannons made a mistake concerning the identity of the proper defendant. But we disagree that the record — especially given the findings of the trial court — allows an appellate court to conclude that Sheriff Berry, in his official capacity, should have known he would be the party sued but for the Cannons' mistake. We therefore vacate the decision of the Court of Appeals and remand the case with direction to remand to the trial court to

8

apply the proper standard.

2. *The most natural reading of OCGA § 9-11-15 (c) (2) emphasizes the extent of the defendant's knowledge, not the nature of the plaintiff's mistake, and encompasses all mistakes — legal and factual — regarding the identity of the proper party.*

We review a trial court's decision on a motion to add a party to an existing action for abuse of discretion. See *Western Sky Financial, LLC v. State of Ga.*, 300 Ga. 340, 357 (3) (a) (793 SE2d 357) (2016). But a "trial court's discretion must be exercised in conformity with the governing legal principles." *Ford Motor Co. v. Conley*, 294 Ga. 530, 538 (2) (757 SE2d 20) (2014). "[W]hen a plaintiff can satisfy the statutory requirements for relation back of an amendment, set out in OCGA § 9-11-15 (c), denying a motion for leave to amend the complaint to add a defendant is an abuse of the trial court's discretion." *Callaway v. Quinn*, 347 Ga. App. 325, 329 (819 SE2d 493) (2018) (citation and punctuation omitted).

When determining the meaning of a statute, we consider the text of the statute itself, because "[a] statute draws its meaning from its text." *City of Marietta v. Summerour*, 302 Ga. 645, 649 (2) (807

9

SE2d 324) (2017) (citation and punctuation omitted). In construing a passage, "we must afford the statutory text its plain and ordinary meaning," view it "in the context in which it appears," and read it "in its most natural and reasonable way, as an ordinary speaker of the English language would." *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013) (citations and punctuation omitted). "[F]or context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." *Thornton v. State*, 310 Ga. 460, 462-463 (2) (851 SE2d 564) (2020) (citation and punctuation omitted).

The General Assembly enacted the portion of the relation-back statute at issue in this case in 1972, amending Georgia's Civil Practice Act to incorporate modifications made to the Federal Rules of Civil Procedure in 1966. See *Rich's, Inc. v. Snyder*, 134 Ga. App. 889, 891 (1) (216 SE2d 648) (1975).[2] The text of the relation-back

---

[2] Georgia's relation-back statute has been amended following the 1972

10

statute provides as follows:

> Whenever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back to the date of the original pleadings if the foregoing provisions are satisfied, and if within the period provided by law for commencing the action against him the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

OCGA § 9-11-15 (c).

Thus, this statute allows a plaintiff to substitute one defendant for another after the claim would otherwise be barred by the statute of limitations, provided that three conditions are met: (1) the claim "arises out of the conduct, transaction, or occurrence set forth . . . in the original pleading," (2) the proposed defendant, before the statute of limitations expired, "received such notice of the institution of the

---

amendment, but the changes are minor and do not alter the substance of the statute. Compare Ga. L. 1972, p. 689, § 6 with OCGA § 9-11-15 (c).

action that he will not be prejudiced in maintaining his defense on the merits," and (3) the proposed defendant, before the statute of limitations expired, "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." OCGA § 9-11-15 (c); see also *Deleo v. Mid-Towne Home Infusion, Inc.*, 244 Ga. App. 683, 684 (536 SE2d 569) (2000). The parties in this case do not dispute that the first and second conditions are met. This case turns on the third condition.

Because "[t]he language of OCGA § 9-11-15 (c) is modeled after Federal Rule of Civil Procedure 15 (c)," and the slight differences between the two are not material to the issue presented here, we may "look for guidance in decisions of the federal courts interpreting and applying Rule 15 (c)" to interpret OCGA § 9-11-15 (c). *Tenet Healthsystem GB, Inc. v. Thomas*, 304 Ga. 86, 88 (816 SE2d 627) (2018) (citation and punctuation omitted).[3] In *Krupski*, which

---

[3] Federal Rule of Civil Procedure 15 (c) (1), which establishes the federal relation-back doctrine, pertinently provides:

> An amendment to a pleading relates back to the date of the original pleading when: . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out —

12

interpreted and applied Rule 15 (c), the plaintiff sued the incorrect corporate entity for injuries sustained while on a cruise, not realizing that the entity that owned or controlled the cruise ship where she was injured was a different, yet closely related, entity. *Krupski*, 560 U.S. at 556. When she sought to substitute the correct corporate entity after the statute of limitations expired, the district court found that she "had not made a mistake concerning the identity of the proper party" because "the word 'mistake' should not be construed to encompass a deliberate decision not to sue a party whose identity the plaintiff knew before the statute of limitations had run." Id. at 545. But the United States Supreme Court concluded that the third condition of Rule 15 (c) was met because relation-back "depends on what the party to be added knew or should have known, not on the amending party's knowledge." Id. at

---

or attempted to be set out — in the original pleading; or (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15 (c) (1) (B) is satisfied and if . . . the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

13

541, 557.

Like the text of the federal relation-back statute, the text of OCGA § 9-11-15 (c) focuses clearly on the proposed defendant's knowledge — "[a]n amendment changing the party against whom a claim is asserted relates back . . . if . . . *the party to be brought in by amendment* . . . (2) knew or should have known . . . ." (emphasis supplied). This text demonstrates that the proper question in determining whether the third condition of relation-back is met is not whether the *plaintiff* knew or should have known the identity of the proper defendant, but whether the proper *defendant* knew or should have known that the action would have been brought against him but for the plaintiff's mistake. See *Krupski*, 560 U.S. at 548. Accordingly, "[i]nformation in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." Id. "For purposes of that inquiry, it would be error to conflate knowledge of a party's existence with the absence of mistake." Id.

The County urges that a plaintiff's mistake must be "factual"[4] to be considered a "mistake concerning the identity of the proper party," and that "legal" mistakes, such as the Cannons' mistake in believing they could not sue the Sheriff under the applicable statute, do not qualify as mistakes under OCGA § 9-11-15 (c) (2). For relation-back to apply, there must be "a mistake concerning the identity of the proper party." OCGA § 9-11-15 (c). And "making a deliberate choice to sue one party instead of another *while fully understanding the factual and legal differences between the two parties* is the antithesis of making" such a mistake. *Krupski*, 560 U.S. at 549 (emphasis supplied). But the County's argument contains a critical error: it overemphasizes the word "identity" at the expense of the word "proper." Although "identity" considered in isolation may usually be a factual issue, an inquiry as to which party is "proper" carries with it a wide range of legal considerations as well as factual ones. Thus, although the mistake in this case was not a

---

[4] The County defines a "factual" mistake as one where the plaintiff sues one defendant while intending to sue another, or where the defendant's name in the original complaint is a misnomer.

factual mistake about the "identity" of potential defendants, it was still a mistake about which party was the "proper" defendant.

The statute's focus on the extent of the defendant's knowledge also indicates that the kinds of mistakes about identity that qualify under the statute are broader than the County suggests. Again, the defendant's knowledge, not the nature of the plaintiff's mistake, is the key factor in determining whether relation-back applies. It is not true that "any time a plaintiff is aware of the existence of two parties and [deliberately] chooses to sue the wrong one, the proper defendant could reasonably believe that the plaintiff made no mistake." *Krupski*, 560 U.S. at 549. Accordingly, both legal and factual mistakes can be mistakes concerning the identity of the proper party.[5]

---

[5] We are not the only state with a relation-back statute modeled after federal Rule 15 (c) to follow *Krupski*'s analysis as the most textually sound. See, e.g., *Flynn v. Campbell*, 402 P3d 434, 439-440 (Ariz. 2017) (departing from state precedent to adopt *Krupski*'s Rule 15 (c) analysis — focusing the inquiry on what the defendant, rather than the plaintiff, knew or should have known, and recognizing both legal and factual mistakes as cognizable — because the *Krupski* analysis was "more consistent with the [Arizona] Rule's text and purpose").

The County also contends that interpreting the word "mistake" to encompass legal as well as factual mistakes would create a rule so broad that it would inhibit the purpose of the statutes of limitation to "provide finality in litigation[,]" *Bryant v. Allstate Ins. Co.*, 254 Ga. 328, 331 (326 SE2d 753) (1985), and allow the relation-back exception to the statute of limitations to swallow the rule. But policy considerations are not a valid reason to depart from the best reading of the statutory text, and we already determined above that the best reading encompasses both legal and factual mistakes. The County's argument also overlooks the two limiting conditions in OCGA § 9-11-15 (c) (2): that the defendant must either know or have reason to know that the lawsuit would have been brought against him, but for the plaintiff's mistake; and that the plaintiff must have made a "mistake" as opposed to a deliberate choice to sue one party over another with full knowledge of the factual and legal differences between the two. Far from allowing relation-back whenever a plaintiff makes a strategic error and then changes its mind, these conditions significantly limit the circumstances where relation-back

may be permitted.

We acknowledge that the Court of Appeals has at times applied analysis of Georgia's relation-back statute that is inconsistent with our analysis above by focusing on the plaintiff's knowledge rather than the knowledge of the proposed new defendant. See, e.g., *Valentino v. Matara,* 294 Ga. App. 776, 778 (2) (670 SE2d 480) (2008); *Deleo,* 244 Ga. App. at 684-685; *Harding v. Godwin,* 238 Ga. App. 432, 434-435 (518 SE2d 910) (1999). To the extent that these or other cases of the Court of Appeals have applied analysis inconsistent with what we articulate here, that analysis is disapproved.

3. *Relation-back applies in this case if Sheriff Berry in his official capacity knew or should have known before the statute of limitations expired that the Cannons would have brought their lawsuit against him but for their mistake concerning the identity of the proper party.*

Under the above interpretation of OCGA § 9-11-15 (c) (2), to determine whether relation-back applies in this case, we ask whether Sheriff Berry in his official capacity, as the proper defendant, knew or should have known that the Cannons would

18

have brought their lawsuit against him but for their mistake concerning the identity of the proper party. The first inquiry is whether the Cannons made a mistake concerning the identity of the proper party. Although the Cannons made a deliberate choice to sue Oconee County rather than suing Sheriff Berry in his official capacity, the record suggests that they did not fully understand the legal differences between the two.[6] Because the Cannons did not believe that Sheriff Berry in his official capacity could be a proper party, in that sense they made a mistake as to the identity of the proper party.

Therefore, the remaining question in this case is whether

---

[6] In their response to the County's motion for summary judgment, the Cannons argued that Oconee County and not Sheriff Berry was the proper entity to sue under the applicable statute, and that suing Sheriff Berry in his official capacity was the same as suing the County. The County did not contest the Cannons' claim about their state of mind in suing the County; in fact, the County contended, as it now contends on appeal, that the Cannons could not substitute Sheriff Berry as the defendant because the Cannons made a legal mistake about whom to sue rather than a mistake about the Sheriff's identity. Moreover, the Court of Appeals concluded that "the Cannons made a deliberate but mistaken choice to sue the County, rather than Sheriff Berry, in his official capacity, based upon a misunderstanding of the proper local government entity to sue for vicarious liability based upon the conduct of a county deputy sheriff." *Cannon*, 353 Ga. App. at 302 (2). The County agrees that conclusion is supported by the record.

19

Sheriff Berry in his official capacity knew or should have known before the statute of limitations expired that he would have been named as the defendant in the original lawsuit but for the Cannons' mistake. It is clear from the record that Sheriff Berry in his official capacity knew about the lawsuit even before its initiation because he received a copy of the presentment. But the record is not clear whether Sheriff Berry knew or should have known that the Cannons would have sued him but for their mistake.[7] The trial court's order denying the Cannons' motion to substitute found no evidence "that Sheriff Berry had or should have had knowledge that [the Cannons] made any mistake whatsoever." But we cannot simply apply those findings to the law we clarify today, because the trial court made the finding prior to this opinion's clarification of the knowledge that is

---

[7] On remand, if the trial court determines that Sheriff Berry in his official capacity *actually* knew that the Cannons would have sued him but for their mistake, then the Cannons' amendment to substitute the Sheriff as the defendant in place of the County would relate back. If the trial court determines that the Sheriff in his official capacity did not know, however, it must then determine whether the Sheriff in his official capacity *should* have known. This determination might require the trial court to decide the extent to which Georgia law imputes knowledge of the law to government officials in their official capacity; such officials in their official capacity are the government.

relevant and the kinds of mistakes that qualify under the statute. See *Fulton County v. Ward-Poag*, ___ Ga. ___, ____ (2) (a) (849 SE2d 465) (2020) ("If a trial court significantly misapplies the law or clearly errs in a material factual finding, we may affirm the trial court's exercise of discretion only when we can conclude that, had the trial court used the correct facts and legal analysis, it would have had no discretion to reach a different judgment." (citation and punctuation omitted)). The extent to which the trial court considered the relevant question in making its finding regarding Sheriff Berry's knowledge is thus unclear.[8] We therefore vacate the decision of the Court of Appeals with direction to vacate the trial court decision and

---

[8] In fact, it is unclear whether the trial court's statement was actually a finding of fact. The trial court also found that the plaintiffs could not have made a mistake concerning the identity of the proper party as a matter of law; if the trial court believed no mistake existed, its finding regarding Sheriff Berry's knowledge may have reflected its legal conclusion rather than an evidentiary finding of fact. Moreover, the court indicated that in order to find that the Sheriff had the required knowledge, it would have to impute to the Sheriff legal expertise superior to that possessed by the Cannons' attorneys. But just because the Cannons' attorneys did not realize they made a mistake does not necessarily negate the possibility that Sheriff Berry knew or should have known that the action would have been brought against him but for the mistake, especially if Georgia law were to require such imputation to Sheriff Berry in his official capacity regardless of whether he had actual knowledge as a matter of fact.

direct the trial court to make findings consistent with the appropriate test for application of relation-back as set forth in this opinion.[9]

*Judgment vacated and case remanded with direction. All the Justices concur.*

DECIDED FEBRUARY 1, 2021.
Certiorari to the Court of Appeals of Georgia — 353 Ga. App. 296.
*Williams Morris & Waymire, Terry E. Williams, Jason C. Waymire*, for appellant.
*Darl H. Champion, Jr.; John D. Hadden; Meredith S. Watts*, for appellees.

---

[9] Based upon its holding, the Court of Appeals did not address the Cannons' alternate enumeration of error that the trial court should have granted their motion for sanctions under OCGA § 9-11-37 (d) and precluded the County from raising an improper party defense. *Cannon*, 353 Ga. App. at 298, 303 (3). The Court of Appeals on remand may address the discovery sanction issue before remanding this case to the trial court; or, if the Court of Appeals determines that the issue is too connected with issues to be settled by the trial court on remand, it may elect to wait and address the discovery sanction issue only if the case comes before it again on a subsequent appeal.