**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

June 14, 2022

# In the Court of Appeals of Georgia

A22A0220. LANGLEY v. TRAVELERS INSURANCE THRU GEICO.

REESE, Judge.

Elizabeth Langley filed a complaint against a nonexistent corporate defendant. She subsequently sought to substitute the proper defendant and have the amendment to her complaint relate back under OCGA § 9-11-15 (c). The trial court denied her motion and granted motions to dismiss. For the reasons set forth infra, we affirm.

Langley owned property in Stone Mountain that was damaged on September 12, 2017, by Hurricane Irma. Langley had homeowner's insurance for the property. She obtained the insurance through "GEICO Ins Agency Inc[.]" The policy document had a large "Travelers" logo on the top of each page, but the actual insurer listed in the policy was "The Travelers Home and Marine Insurance Company[,] One of The

Travelers Property Casualty Companies" (hereinafter, "Travelers Home and Marine").

The policy contained a two-year limitation period to bring a suit after the date of loss.

After the storm, Langley made a claim on her insurance policy. She received a check for $5,000 but did not deposit it because she believed the amount was insufficient to cover the damage to the property. The letter had a Travelers logo, was addressed from "The Travelers - Alpharetta Bi/Prop[,]" and listed Travelers Home and Marine near the middle of the page. The check itself was issued from "Travelers" but did not list Travelers Home and Marine.

In September 2018, Langley filed a pro se complaint against "Travel Insurance Thru Geico[.]"[1] Langley served the complaint on GEICO on September 3, 2019,[2] and The Phoenix Insurance Co. d/b/a Traveler's ("Phoenix") on September 11, 2019. On September 17, 2019, more than two years after the date of loss, she served Travelers Indemnity Company ("Travelers Indemnity").

GEICO, Phoenix, and Travelers Indemnity filed motions to dismiss, or in the alternative, motions for summary judgment. They argued, among other things, that

---

[1] The complaint also named Apex Disaster Management, Inc. Langley's claim against Apex is not at issue in this appeal.

[2] GEICO disputes the sufficiency of this service.

2

they were not the named defendant in the suit — "Travel Insurance Thru Geico" — and that they did not issue the insurance policy to Langley.

Langley, now with counsel, filed a motion to substitute Travelers Home and Marine as the proper party. She argued that she was entitled to substitute the proper party under OCGA § 9-11-21 and OCGA § 9-11-15 (c) because Phoenix and Travelers Home and Marine were "sister" corporations and thus Travelers Home and Marine knew of her complaint and knew or should have known that she had misidentified the proper defendant. She contended that Phoenix and Travelers Home and Marine shared the same address, corporate officers, registered agent, and counsel in this case, and that both were subsidiaries of the same Travelers entity. In support of these facts, Langley attached an affidavit from herself with exhibits showing Internet printouts from the Georgia Secretary of State business search and a printout from the Security and Exchange Commission ("SEC") listing the various Travelers subsidiaries.

After a hearing, which was not transcribed, the trial court granted the corporate entities' motions to dismiss and denied Langley's motion to substitute party. The trial court reasoned that Langley had failed to satisfy the requirements of OCGA § 9-11-15 (c) because she did not present admissible evidence showing that Travelers Home and

3

Marine had knowledge of the action prior to the expiration of the contractual limitations period, and because she failed to show that Phoenix was closely intertwined with Travelers Home and Marine. This appeal followed.[3]

We review a trial court's decision to add a party under OCGA § 9-11-15 (c) for an abuse of discretion.[4] As the party seeking to benefit from OCGA § 9-11-15 (c), Langley had the burden to produce evidence that she satisfied the notice requirements of the statute.[5] Still, "[t]he provisions of OCGA § 9-11-15 (c) should be liberally construed to effect its purpose of ameliorating the impact of the statute of limitation."[6] And the "trial court's discretion must be exercised in conformity with the governing legal principles. When a plaintiff can satisfy the statutory requirements . . . set out in OCGA § 9-11-15 (c), denying a motion for leave to amend the complaint

---

[3] We dismissed Langley's original appeal as interlocutory because Apex remained a party to the lawsuit. See Case No. A21A1393. The trial court vacated its prior order granting the motions to dismiss and denying Langley's motion to substitute, reentered the order, and issued a certificate of immediate review. We then granted Langley's application for an interlocutory appeal.

[4] See *Oconee County v. Cannon*, 310 Ga. 728, 731 (2) (854 SE2d 531) (2021).

[5] See *McNeil v. McCollum*, 276 Ga. App. 882, 886 (1) (625 SE2d 10) (2005).

[6] *Cartwright v. Fuji Photo Film U.S.A.*, 312 Ga. App. 890, 894 (2) (720 SE2d 200) (2011) (citation and punctuation omitted).

4

to add a defendant is an abuse of the trial court's discretion."[7] With these guiding principles in mind, we now turn to Langley's claim of error.

Langley argues that the trial court erred in denying her motion to substitute Travelers Home and Marine as the proper defendant to the action. She contends that the evidence showed that Travelers Home and Marine had notice of the case because each of the corporate entities served had access to her policy, even though she did not include it with the complaint, and because Phoenix and Travelers Home and Marine were sufficiently intertwined corporate entities.[8]

Under OCGA § 9-11-21, parties may be dropped or added by the court at any stage of the action. Once the limitation period has expired, OCGA § 9-11-15 (c) governs whether the claim will relate back to the date of the original pleadings:

> Whenever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against

---

[7] *Oconee County*, 310 Ga. at 731-732 (2) (citations and punctuation omitted).

[8] Langley argued before the trial court and on appeal that an OCGA § 9-11-15 (c) analysis is applicable to the facts in this case. We thus similarly analyze these issues under OCGA § 9-11-15 (c), but express no opinion as to whether compliance with OCGA § 9-11-15 (c) is generally necessary or applicable to contractual, as opposed to statutory, limitations periods.

whom a claim is asserted relates back to the date of the original pleadings if the foregoing provisions are satisfied, and if within the period provided by law for commencing the action against him the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.[9]

The Supreme Court of Georgia has thus summarized the three conditions a plaintiff must satisfy to substitute one defendant for another after the claim would otherwise be barred by the statute of limitation:

> (1) the claim arises out of the conduct, transaction, or occurrence set forth in the original pleading, (2) the proposed defendant, before the statute of limitations expired, received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (3) the proposed defendant, before the statute of limitations expired, knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.[10]

---

[9] OCGA § 9-11-15 (c).

[10] *Oconee County*, 310 Ga. at 733 (2) (citations and punctuation omitted).

6

We focus here on the second requirement — whether Travelers Home and Marine received notice of the action before the two-year limitations period expired. In order to satisfy this requirement, Travelers Home and Marine must have had notice of the action and not just the underlying facts of the dispute.[11]

A plaintiff may satisfy this notice requirement by showing that she served another closely intertwined corporate entity or a "sister" corporation of the new defendant.[12] Evidence that the two corporations shared the same address, registered agent, corporate officers, legal counsel, or ownership can demonstrate that the two corporations were sufficiently intertwined to satisfy the notice requirement of OCGA § 9-11-15 (c).[13]

---

[11] See *Harrison v. Golden*, 219 Ga. App. 772, 773 (1) (466 SE2d 890) (1995).

[12] See *Tanner's Rome v. Ingram*, 236 Ga. App. 275, 276 (511 SE2d 617) (1999).

[13] See *Leary v. Perdue Farms*, 359 Ga. App. 123, 127 (2) (856 SE2d 772) (2021) (holding that two corporations were sufficiently intertwined to satisfy the notice requirement of OCGA § 9-11-15 (c) where they shared the same principal office and registered agent, and where a claims adjuster from the related entity responded to the plaintiff's claim); *Parks v. Hyundai Motor America*, 258 Ga. App. 876, 882 (575 SE2d 673) (2002) (holding that two corporations were intertwined given the history of lawsuits against both entities and where one corporation was the sole shareholder of the other); *Fontaine v. The Home Depot*, 250 Ga. App. 123, 124-125 (1) (550 SE2d 691) (2001) (holding that two corporations were intertwined where they shared the same registered agent, legal counsel, and the building where

Langley argues that Phoenix, whom she served before the expiration of the contractual limitation period, was sufficiently intertwined with Travelers Home and Marine because the two entities shared the same address, registered agent, corporate officers, and ownership. Such facts would meet the notice requirement of OCGA § 9-11-15 (c).[14] However, to prove these facts, Langley attached to her affidavit uncertified printouts from the Secretary of State and the SEC. In *Matson v. Noble Investment Group*, we held that the trial court did not abuse its discretion in rejecting similar computer printouts as inadmissible because they did not contain a certificate or attestation from a public officer and were thus unauthenticated.[15] We held that the remaining evidence — that the two corporations were represented by the same counsel during the case, that one corporation was a subsidiary of the other, and pre-litigation correspondence — was insufficient to establish notice under OCGA § 9-11-

---

the plaintiff was injured); *Tanner's Rome*, 236 Ga. App. at 276 (holding that two corporations were intertwined where one corporation admitted that it was a "sister" corporation to the other); *Rich's, Inc. v. Snyder*, 134 Ga. App. 889, 891-92 (1) (216 SE2d 648) (1975) (holding that two corporations were intertwined where they shared corporate officers and had the same registered agent).

[14] See *Leary*, 359 Ga. App. at 127 (2).

[15] See 288 Ga. App. 650, 656 (2) (655 SE2d 275) (2007).

15 (c).[16] Similarly, in this case, we cannot consider the unauthenticated computer printouts, and the remaining admissible evidence does not establish that Phoenix and Travelers Home and Marine were sufficiently intertwined.

Langley contends that *Matson* is distinguishable because it was decided under the old Evidence Code and because the documents are self-authenticating under OCGA § 24-9-902 (5). But the statutory provision that *Matson* was decided under appears in the new Evidence Code in OCGA § 24-9-920.[17] And OCGA § 24-9-902 (5) is inapplicable as the printouts are not "[b]ooks, pamphlets, or other publications purporting to be issued by a public office[.]" Rather, the printouts are "duplicate[s] of an official record or report or entry[,]" which are governed by OCGA § 24-9-902 (4) and require a certification to be self-authenticating.[18] Thus, the printouts were not

---

[16] See id. at 656-657 (2).

[17] Compare OCGA § 24-9-920 ("The certificate or attestation of any public officer . . . of this state . . . shall give sufficient validity or authenticity to any copy or transcript of any record, document, paper or file, or other matter or thing in such public officer's respective office, or pertaining thereto, to admit the same in evidence."), with former OCGA § 24-7-20 (2007) ("The certificate or attestation of any public officer . . . of this state . . . shall give sufficient validity or authenticity to any copy or transcript of any record, document, paper or file, or other matter or thing in his respective office, or pertaining thereto, to admit the same in evidence.").

[18] See OCGA § 24-9-902 (4) ("Extrinsic evidence of authenticity as a condition precedent to admissibility shall not be required with respect to the following: . . . A

9

self-authenticating, and the situation here is not sufficiently distinguishable from *Matson*.[19]

Accordingly, the trial court did not abuse its discretion in finding that Langley failed to present sufficient evidence that Travelers Home and Marine was intertwined

---

duplicate of an official record or report or entry therein or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification by certificate complying with paragraph (1), (2), or (3) of this Code section or complying with any law of the United States or of this state, including Code Section 24-9-920[.]").

[19] OCGA § 24-9-902 (4) is not the only method to authenticate public records, and indeed a party may point to other evidence showing that the document is actually "from the public office where items of this nature are kept[ ]" or to the document's "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics[.]" See OCGA § 24-9-901 (b) (4), (7); see also *Koules v. SP5 Atlantic Retail Ventures*, 330 Ga. App. 282, 286 (2) (767 SE2d 40) (2014) ("The appearance and content of a document may also be circumstantial evidence of authenticity."). However, Langley does not argue that the printouts were authentic under these sections. Moreover, the trial court found that she did not put forth sufficient "admissible evidence[,]" and the hearing was not transcribed. "In the absence of a transcript we must assume the trial court's action would be supported by the record." *City of Atlanta v. Paulk*, 274 Ga. App. 10, 13 (1) (616 SE2d 210) (2005) (citation and punctuation omitted). Given these circumstances, and our prior decision in *Matson*, we cannot say that the trial court abused its discretion in excluding the printouts. See *Koules*, 330 Ga. App. at 285 (2) ("A trial court's decision regarding the admission or exclusion of evidence is reviewed for an abuse of discretion.") (citation and punctuation omitted).

with Phoenix and had sufficient notice of the lawsuit under OCGA § 9-11-15 (c).[20]

We thus affirm.

*Judgment affirmed. Doyle, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[20] See *Matson*, 288 Ga. App. at 656-657 (2).