**FIFTH DIVISION**
**RICKMAN, C. J.,**
**BARNES, P. J., and MCFADDEN, P. J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**July 1, 2021**

# In the Court of Appeals of Georgia

A21A0086. REDMOND PARK HOSPITAL LLC d/b/a REDMOND REGIONAL MEDICAL CENTER v. FLOYD HEALTH CARE MANAGEMENT INC. d/b/a FLOYD MEDICAL CENTER et al.

A21A0087. REDMOND PARK HOSPITAL LLC d/b/a REDMOND REGIONAL MEDICAL CENTER v. HAMILTON MEDICAL CENTER, INC. et al.

A21A0088. REDMOND PARK HOSPITAL LLC d/b/a REDMOND REGIONAL MEDICAL CENTER v. TANNER MEDICAL CENTER, INC. d/b/a TANNER MEDICAL CENTER-CARROLLTON et al.

RICKMAN, Chief Judge.

Georgia's State Health Planning and Development Act, OCGA § 31-6-1 et seq.

(the "CON Act"),[1] and its implementing rules, Ga. Comp. R. & Regs. ("Rule") 111-2-

---

[1] The CON Act was amended in several respects during the General Assembly's 2019 legislative session. See 2019 Ga. Laws Act 41 (eff. July 1, 2019). It is undisputed, however, that the amendments do not govern Redmond's petition or the underlying proceedings. All statutory references will be to the prior version of the

2-.01 et seq., mandate that any medical facility seeking to intervene into the administrative appeal of a competing health care facility that has applied for a certificate of need ("CON") from the Department of Community Health ("the Department") to offer new health care services do so within 30 days of the Department's initial decision. OCGA § 31-6-44 (d); see also Rule 274-1-.03 (2). Redmond Hospital LLC d/b/a Redmond Regional Medical Center ("Redmond") sought to intervene in the administrative appeals of Floyd Health Care Management Inc. d/b/a Floyd Medical Center ("Floyd"), Hamilton Medical Center, Inc. ("Hamilton"), and Tanner Medical Center, Inc. d/b/a Tanner Medical Center-Carrollton ("Tanner") (collectively, "the Medical Centers"), each of which had applied for a CON to offer new open heart surgery services. Redmond, however, failed to do so within 30 days of the Department's initial decision. Redmond now argues that the CON Act does not govern its intervention rights in the CON appellate processes into which it sought to intervene. We disagree with Redmond's position. For the reasons set forth below, we dismiss the Floyd appeal, Case No. A21A0086,

_____

statute unless otherwise indicated.

as moot.[2] We otherwise affirm the superior courts' orders in Hamilton, Case No. A21A0087, and Tanner, Case No. A21A0088.

Upon review of a ruling from the Department, this Court generally "determines whether 'substantial evidence' supports the agency's findings of fact, and whether the conclusions of law drawn from those findings of fact are sound." *Palmyra Park Hosp., Inc. v. Phoebe Sumter Medical Center*, 310 Ga. App. 487, 488 (714 SE2d 71) (2011). To the extent that pertinent facts in this case are undisputed and the jurisdictional issues before this Court involve purely questions of law, we apply a de novo standard of review. See *Doctors Hospital of Augusta, LLC v. Georgia Department of Community Health*, 344 Ga. App. 583, 583 (811 SE2d 64) (2018).

The undisputed facts are as follows. In February 2018, the Medical Centers each applied for a CON that would allow them to develop open heart surgery services in their respective service areas. The Medical Centers each applied for a CON under

---

[2] As described more fully in the opinion, unlike the CON applications of Hamilton and Tanner, Floyd's CON application was ultimately denied after the administrative appeal process, an outcome advocated by Redmond. Floyd sought judicial review from the Superior Court of Floyd County, which affirmed the denial. This Court later denied Floyd's petition for discretionary appellate review of that decision, rendering the superior court's ruling final and on the merits, and Redmond's appeal in the Floyd action moot. See *Guthrie v. Wickes*, 295 Ga. App. 892, 894 (2) (673 SE2d 523) (2009). We therefore dismiss the appeal in Case No. A21A0086.

the general review considerations contained in OCGA § 31-6-42 (a), and the service-specific Department rules governing open heart surgery services, including the "atypical barrier to care" exception set forth in Rule 111-2-2-.22 (3) (a) (2).[3]

Redmond notified the Department of its objection to all three applications and filed opposition materials to each during the initial review process. The Department consolidated the applications and issued its initial decision denying all three on June 25, 2018 (the "Initial Decision"). The deadline to request an administrative appeal hearing to the CON Appeal Panel or to request to intervene in such a hearing was July 25, 2018. See OCGA § 31-6-44 (d); Rule 274-1-.04 (3). Tanner filed its request for an administrative appeal hearing on July 23, 2018, and Floyd and Hamilton filed their respective requests on July 24, 2018.

On July 26, 2018, 31 days after the Department issued its Initial Decision, Redmond filed a request to intervene in Floyd's administrative appeal hearing, citing the CON statute and its implementing rules. See OCGA § 31-6-44 (d); Rule 274-1-.03. Floyd filed a motion to deny Redmond's request to intervene as untimely under the same statutory and regulatory authority. Thereafter, 51 days after the Department

---

[3] Rule 111-2-2-.22 (3) (a) (2) allows the Department to remedy "an atypical barrier to open heart surgery services based on cost, quality, financial access, or geographic accessibility."

4

issued its Initial Decision, Redmond filed a request with the CON Appeal Panel seeking to also intervene in Hamilton's and Tanner's respective appeals. As before, Redmond's request to intervene cited the CON statute and its implementing rules, but it also contained a "request to intervene as a permissive party" under the Administrative Procedure Act ("APA"). Both Hamilton and Tanner filed motions opposing Redmond's requests to intervene in their respective appeals on the ground that the requests were untimely.

The appeal panel hearing officer issued an order granting the Medical Centers' motions to deny Redmond's intervention requests in each of the appeals, holding that Redmond's failure to file its requests within 30 days of the Department's Initial Decision precluded it from intervening in the appeals under both the CON Act and the APA (the "Intervention Order"). Upon examination of the merits of the appeals themselves, the hearing officer ultimately affirmed the Department's denial of each of the Medical Centers' CON applications.

The Medical Centers continued to pursue their administrative appeals, each seeking review from the Department's Commissioner. See OCGA § 31-6-44 (i). Likewise, Redmond appealed to the Commissioner to review the hearing officer's

5

Intervention Order denying its requests to intervene.[4] The Commissioner, through a designee, issued a final order reversing the denial of Hamilton's and Tanner's CON applications, instead granting those applications under the "atypical barrier to care" exception (the "Final Order"). See Rule 111-2-2-.22 (a) (2). In the Final Order, the Commissioner's designee affirmed the denial of Floyd's application and denied Redmond's request to overturn the Intervention Order.

In three separate actions, Redmond petitioned the Superior Court of Fulton County for judicial review of the Final Order. In the Floyd action, Redmond requested that it be permitted "to participate as an intervening party" in the event that a petition for review was filed by Floyd.[5] In the Hamilton and Tanner actions, Redmond sought judicial review of the Final Order's grant of the CON applications. Redmond also sought a declaratory judgment in the Hamilton and Tanner actions that

---

[4] Redmond attempted to appeal the Intervention Order to the Commissioner on an expedited basis prior to the CON Appeal Panel's decision on the merits of the Medical Centers' appeals, but the Commissioner's designee rejected Redmond's appeal request as premature.

[5] Floyd, however, did not seek judicial review in Fulton County; rather, it sought review from the Superior Court of Floyd County, and that court affirmed the denial of Floyd's CON application.

the "atypical barrier to care" rule[6] under which the Commissioner's designee granted their CON applications be declared null and void.

The Medical Centers each moved to dismiss Redmond's petitions for want of standing and, after conducting a consolidated hearing, the superior court granted the Medical Centers' motions in each action. In three separate orders, the superior court determined that Redmond lacked standing to seek judicial review of the Final Order under both the CON Act and the APA because it failed to timely seek intervention in the initial administrative appeal hearing before the CON Appeal Panel.[7] In the Hamilton and Tanner actions, the superior court further held that Redmond could not "invoke declaratory judgment as a means of circumventing the timely intervention requirements of the CON Act and thus avoid its obligation to exhaust all administrative remedies." This appeal follows.

1. Redmond argues that the superior court erred by holding that it lacked standing to seek judicial review of the Final Order, an error that Redmond asserts was

---

[6] See Rule 111-2-2-.22 (3) (a) (2).

[7] In the Floyd action, the superior court further reasoned that Redmond lacked standing to appeal because it was not harmed by the Final Order in which Floyd's CON application was denied, was precluded by the invited error doctrine, and its petition was rendered moot because Floyd did not seek judicial review in the Fulton County Superior Court.

7

premised upon the superior court's erroneous conclusion that its requests to intervene in the administrative appeal hearing before the CON Appeal panel were untimely. We disagree.

By its express language, the CON Act limits the entities who may seek judicial review of a Commissioner's final order to "[a]ny party to the initial administrative appeal hearing." OCGA § 31-6-44.1 (a). Redmond concedes that it was not a party to the initial administrative appeal before the CON Appeal Panel hearing officer. Thus, the issue of whether Redmond had standing to seek judicial review of the Commissioner's Final Order turns on whether Redmond's exclusion from the Medical Centers' initial administrative appeal hearing was erroneous.[8]

The CON Act and its implementing rules dictate unequivocally that "[a] request for hearing or intervention shall be filed with the chairperson of the [CON Appeal Panel] within 30 days of the date of the [Department's initial decision]." OCGA § 31-6-44 (d); see Rule 274-1-.03 (2) ("Such request for hearing or

---

[8] We decline to consider Redmond's assertion that it has standing to seek judicial review under OCGA § 50-13-19 (a), as that argument was not raised below and we will not consider it for the first time on appeal. See *Forsyth County v. Mommies Properties LLC*, __ Ga. App. __, n.20 (3) (b) (855 SE2d 126) (2021).

intervention shall be filed with the Chairperson of the Appeal Panel within thirty (30) days of the date the Department decision is issued. . . ."); Rule 24-1-.03 (3) ("A request for an initial administrative appeal hearing before a hearing officer or to intervene in such a hearing shall be in writing and must be received by the Appeal Panel . . . within the applicable thirty (30) day period.").

Nevertheless, Redmond argues that its requests to intervene, filed 31 days and 51 days after the Department's Initial Decision was rendered, were not untimely because (a) there was not an existing proceeding in which to intervene before the statutory deadline; and (b) the CON Act and its 30-day deadline were inapplicable to Redmond's intervention requests, and those requests should have been permitted under the APA.

When considering Redmond's arguments within the context of the statutes at issue,

> we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. In our interpretation of statutes, we thus look to the text of the

> provision in question, and its context within the larger legal framework, to discern the intent of the legislature in enacting it.

(Citations and punctuation omitted.) *Scott v. State*, 299 Ga. 568, 571 (2) (788 SE2d 468) (2016); see OCGA § 1-3-1 (a), (b).

(a) Redmond asserts that it could not file an intervention request within 30 days of the Initial Decision because it "[could not] intervene in a proceeding that ha[d] not yet commenced." We disagree.

By its plain terms, the CON Act requires only that a "*request* for hearing or intervention" be filed within the 30-day deadline. OCGA § 31-6-44 (d); see Rule 274-1-.03 (2). An intervention request would be granted only if an appeal hearing was also requested and the appeal panel hearing officer determined that the putative intervenor met the requirements for intervention. See OCGA § 31-6-44 (d); Rule 274-1-.03. Had the General Assembly desired to impose a later deadline on an intervention request than it imposed on a hearing request, it could have done so. See *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) ("[W]e must presume that the General Assembly meant what it said and said what it meant.") (citation and punctuation omitted). Because there is no ambiguity in the CON Act's mandate that a request for intervention be filed within 30 days, we apply the statute as written. See id. at 173 (1)

10

(a) ("[I]if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.").

(b) Redmond further argues that the CON Act is inapplicable to its intervention rights, which it asserts instead are governed by the APA, namely OCGA § 50-13-14 (a). Again, we disagree.

In support of its position that the CON Act does not govern its intervention rights in the CON proceedings into which it sought to intervene, Redmond relies on OCGA § 31-6-44 (d), which, during the relevant time period, provided that:

> Any applicant for a project, any competing applicant in the same batching cycle, *any competing health care facility that has notified the department prior to its decision that such facility is opposed to the application before the department*, or any county or municipal government in whose boundaries the proposed project will be located *who is aggrieved by a decision of the [D]epartment shall have the right to an initial administrative appeal hearing before an appeal panel hearing officer or to intervene in such hearing*.

(Emphasis supplied.) OCGA § 31-6-44 (d);[9] see also Rule 274-1-.03 (1). According to Redmond, because it was not "aggrieved" by the Department's Initial Decision denying the Medical Centers' CON applications to which it was opposed, the CON Act did not apply.

As an initial matter, the record shows that Redmond's request to intervene in Floyd's initial administrative appeal hearing expressly invoked this exact provision as the source of its request, despite the fact that Floyd's application had been denied. Specifically, Redmond sought to "participate as an intervenor in Floyd's administrative appeal before a Certificate of Need Hearing Panel Officer pursuant to OCGA § 31-6-44 (d) and . . . Rule 274-1-.03." It was not until Floyd moved to

---

[9] We reject Redmond's contention that the 2019 amendments to the CON Act during which the "aggrieved" language was removed supports its interpretation of the statute by "expand[ing] the [CON Act's] coverage to potentially include non-aggrieved intervenors like Redmond." When adopting the amendments, the General Assembly reduced, in OCGA § 31-6-43 (d) (2), the categories of persons who may oppose a CON application during the initial phase of review, and who may later appeal or intervene in the administrative appeal. See 2019 Ga. Laws Act 41 (eff. July 1, 2019). It then made the corresponding amendments to OCGA § 31-6-44 (d) to reflect that change. When read in context, nothing in the statutory language expands the CON Act's coverage as suggested by Redmond; rather, the amendments limit the categories of persons authorized to oppose a CON application and/or to later appeal or intervene.

12

dismiss the request as untimely and Redmond filed its additional requests to intervene in Hamilton's and Tanner's appeals that it sought to invoke the APA.

Regardless, Redmond's argument fails. A natural reading of the text of OCGA § 31-6-44 (d) suggests that an "aggrieved" party – i.e., a competing health care facility opposed to a CON application that was granted by the Department – has a right to an appeal hearing. See id. ("[A]ny competing health care facility that has notified the department prior to its decision that such facility is opposed to the application before the [D]epartment. . . who is aggrieved by a decision of the [D]epartment shall have the right to an initial administrative appeal hearing before an appeal panel hearing officer . . ."). Alternatively, a non-aggrieved but interested party – i.e., a competing health care facility opposed to a CON application that was denied by the Department – has the right to intervene "in such hearing." See id. ("[A]ny competing health care facility that has notified the department prior to its decision that such facility is opposed to the application before the [D]epartment. . . shall have the right . . . to intervene in such hearing."). As aptly stated by the superior court, in this context, "there is no such thing as an 'aggrieved intervenor.'" Rather, the statutory text "naturally and reasonably admits of only one meaning;" namely, it gives the party "aggrieved" by the Department's initial decision the right to appeal, while

13

giving the remaining, interested parties the right to intervene in that hearing upon timely request. *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013); *Najarian Capital v. Federal Nat. Mortgage Assoc.*, 354 Ga. App. 159, 162 (840 SE2d 500) (2020) ("Our interpretation of a statute must conform with common sense and sound reasoning.") (citations and punctuation omitted).

Under Redmond's unnatural construction of the statute, a heath care competitor that successfully opposed a CON application during the Department's initial phase of review in a multi-tiered administrative process is removed entirely from that process if the Department denies the application because the competitor is not "aggrieved." The competitor thereafter loses the right not only to participate in the applicant's initial appeal hearing, but also loses standing to participate in each subsequent step in the appellate process, including a review by the Commissioner and the pursuit of judicial review. We decline to adopt such an excessively narrow construction of the CON Act, which would essentially eliminate the concept of intervention from the statute. See id. ("[A] statute should be read according to its natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation.") (citations and punctuation omitted).

14

We likewise reject Redmond's assertion that the APA, as opposed to the CON Act, governs its intervenor rights in the CON appeal process. In support of that argument, Redmond relies on OCGA § 50-13-14 (2), which provides,

> In contested cases . . . [u]pon timely application, any person may be permitted to intervene when a statute confers a conditional right to intervene or when the applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion, the agency shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of existing parties.

OCGA § 50-13-14 (b).

First, through its use of the term "[u]pon timely application," the APA incorporates the same time limitation as that which is contained in the CON Act. See id. Indeed, the CON Act explicitly states that the hearing officer shall conduct an appeal hearing in accordance with the APA, "except as otherwise specified in [OCGA § 31-6-44]," which includes the 30-day filing requirement. OCGA § 31-6-44 (e); see Rule 274-1-.10. This construction is consistent with the Department's own interpretation of the two statutes.[10] See *In re: Frank A Critz, M.D., d/b/a*

---

[10] Additionally, the APA, unlike the CON Act, grants to intervenors only an "extremely limited right of participation" that does not include the right "to present evidence, to cross-examine witnesses, or otherwise be fully heard on the issues

*Radiotherapy Clinics of Georgia*, Project No. 061-04 (April 1, 2005) (holding that the APA's "upon timely application" language must be read in conjunction with the CON Act's 30-day deadline for filing requests);[11] see generally *Georgia Dept. Of Revenue v. Owens Corning*, 283 Ga. 489, 490 (660 SE2d 719) (2008) ("[T]he interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight and deference."). Finally, even assuming arguendo that the statutes could be read as conflicting, the rules of statutory construction dictate that the more recent and specific provisions of the CON Act govern over the older and more general provisions of the APA. See generally

---

involved." *Georgia Power Co. v. Campaign For a Prosperous Georgia*, 255 Ga. 253, 257 (1) (336 SE2d 790) (1985). Nothing in the text of OCGA § 31-6-44 (d), nor in the larger framework of the CON Act, supports a construction that would treat the rights of an intervening competitor who opposed a CON application that is initially denied so diametrically differently from an intervening competitor who opposed a CON application that is initially granted during the Department's first level of administrative review. See *Alltel Ga. Communications v. Ga. PSC*, 270 Ga. 105, 107 (1) (505 SE2d 218) (1998) (recognizing our duty to "view the statute as a whole to construe all parts of a statute together to make all its parts harmonize") (citation and punctuation omitted).

[11] The much older administrative decisions upon which Redmond relies, issued prior to the *Critz* decision or intervening changes to the CON Act, Department rules, and appellate rules and procedures, are not persuasive. Cf. *Spann v. Davis*, 355 Ga. App. 673, 677 (2) (845 SE2d 415) (2020) (recognizing that when faced with conflicting decisions from the Supreme Court, the most recent case is controlling).

*Bellsouth Telecommunications, LLC v. Cobb County*, 305 Ga. 144, 151 (1) (824 SE2d 233) (2019) ("Where two statutes are in conflict, the later-enacted statute prevails over the one enacted earlier, and the more specific statute governs over the more general one."); *Metzger v. Americredit Financial Services, Inc.*, 273 Ga. App. 453, 458 (615 SE2d 120) (2005).

2. Redmond argues that the superior court erred by denying its claim for a declaratory judgment pursuant to OCGA § 50-13-10.[12] Again, we disagree.

In its petition for judicial review in the Hamilton and Tanner actions, Redmond argued for the first time that Rule 111-2-2-.22 (a) (2), which contains the "atypical barrier to care" exception under which the Commissioner evaluated and granted the CON applications, was unconstitutional and invalid. Redmond's petition contained a second count seeking declaratory relief on the same issue, citing OCGA § 50-13-10.

---

[12] OCGA § 50-13-10 provides,
The validity of any rule . . . may be determined in an action for declaratory judgment when it is alleged that the rule . . . or its threatened application interferes with or impairs the legal rights of the petitioner. A declaratory judgment may be rendered whether or not the petitioner has first requested the agency to pass upon the validity of the rule . . . in question.

17

The superior court held that Redmond waived its challenges to the Rule by failing to raise the issue during the initial administrative process, and that Redmond cannot simultaneously seek declaratory relief and judicial review. The superior court explained that, "Redmond may not invoke declaratory judgment as a means of circumventing the timely intervention requirements of the CON Act and thus avoid its obligation to exhaust all administrative remedies."

First, the superior court correctly held that Redmond's failure to preserve its constitutional challenge to the Rule in "its administrative opposition materials or other administrative pleadings" filed with the Department precluded the court's consideration of that challenge. See *North Fulton Community Hosp., Inc. v. State Health Planning & Development Agency*, 168 Ga. App. 801, 803 (1) (310 SE2d 764) (1983) (holding that constitutional challenges to agency decisions must "be urged in the first instance before the agency"). Contrary to Redmond's assertion, it was not "denied the opportunity for review"; rather, Redmond was excluded from the appellate review process because it failed to seek it within the time prescribed by statute.

And although Redmond correctly points out that OCGA § 50-13-10 allows a party to challenge the validity of an agency rule through a declaratory judgment

18

action "whether or not the petitioner has first requested the agency to pass upon the validity of the rule," a petition for judicial review and declaratory judgment action cannot be brought simultaneously. *See State Health Planning Agency v. Coastal Empire Rehabilitation Hosp.*, 261 Ga. 832 (412 SE2d 532) (1992) ("[A]n action for declaratory judgment challenging the validity of an agency rule has no place once judicial review of an administrative decision is sought."). It follows that the superior court did not err by denying Redmond's request for declaratory relief. See id.

In sum, the superior court did not err in dismissing the petitions for lack of standing and in denying Redmond's request for declaratory relief. We, therefore, affirm in Case Nos. A21A0087 and A21A0088; Case No. A21A0086 stands dismissed as moot.

*Judgments affirmed in Case Nos. A21A0087 and A21A0088. Barnes, P. J. concurs and McFadden, P. J. concurs in part and dissents in part. Appeal dismissed as moot in Case No. A21A0086. Barnes, P. J. concurs and McFadden, P. J. concurs in part and dissents in part.*

# In the Court of Appeals of Georgia

A21A0086. REDMOND PARK HOSPITAL LLC v. FLOYD
      HEALTH CARE MANAGEMENT, INC. et al.

A21A0087. REDMOND PARK HOSPITAL LLC v. HAMILTON
      MEDICAL CENTER, INC. et al.

A21A0088. REDMOND PARK HOSPITAL LLC v. TANNER
      MEDICAL CENTER, INC. et al.

MCFADDEN, Presiding Judge, concurring in part and dissenting in part.

Redmond Park Hospital participated in these administrative proceedings at the first level of administrative consideration. The tribunals below erred in holding that

it was required to meet the deadline set out in OCGA § 33-6-44 (d) (2008) in order to continue to participate at the second level. That statute is applicable only to a participant "aggrieved" by the first level decisions, and those decisions were favorable to Redmond. So I respectfully dissent to the judgments in Cases No. A21A0087 and A21A0088. I concur with the majority that the appeal in A21A0086 should be dismissed as moot.

Georgia closely regulates the construction and expansion of medical facilities. Such facilities can be constructed or expanded only if the Department of Community Health issues a certificate of need, often called a CON. The department's procedures for deciding whether to issue such a certificate are set out at OCGA § 31-6-40 et seq. (the "CON statutes"). As to administrative procedures, the CON statutes specify departures from the Administrative Procedure Act and otherwise default to it. See, e.g., OCGA § 31-6-44 (e).

Those procedures entail three levels of administrative consideration: an initial decision by the department; an intermediate decision by an independent appeal panel hearing officer, and a final administrative decision by the commissioner or, as here, his designee. Those procedures also grant certain rights to certain individuals and entities, like Redmond, that stand to be affected by the decision.

Here the appellees, Floyd Health Care, Hamilton Medical Center, and Tanner Medical Center, all sought to develop open heart surgery centers. So they applied for certificates of need. Redmond, a competitor, opposed all three applications. In a consolidated initial decision, the department denied all three applications.

So all three applicants moved on to the second level. They invoked their right to an appeal panel hearing by filing a request "with the chairperson of the appeal panel within 30 days of the date of the decision" of the department. OCGA § 31-6-4 (d) (2008).

The question before us is whether Redmond was also required to meet that 30-day deadline. The tribunals below held that it was. And, because Redmond did not meet that deadline, they held that Redmond forfeited the opportunity to participate in the second and third levels of administrative consideration and on judicial review before the superior court. I disagree.

The 2008 version of OCGA § 31-6-44 (d) which was in effect in 2018 — and which the parties agree is the applicable version — provided in part,

> Any applicant for a project, any competing applicant in the same batching cycle, any competing health care facility that has notified the department prior to its decision that such facility is opposed to the application before the department, or any county or municipal

22

government in whose boundaries the proposed project will be located *who is aggrieved by a decision of the department* shall have the right to an initial administrative appeal hearing before an appeal panel hearing officer or to intervene in such hearing. Such request for hearing or intervention shall be filed with the chairperson of the appeal panel within 30 days of the date of the [first level] decision made pursuant to Code Section 31-6-43.

OCGA § 31-66-44 (d) (2008) (emphasis supplied). This statutory text contains three distinct parts. The first part identifies the four different categories of persons to whom the statute applies. The second part confers upon those persons a right. The third part defines the scope of that right: "to [obtain] an initial administrative appeal hearing before an appeal panel hearing officer or to intervene in such hearing." Id.

"In construing a passage [of statutory text], we must afford the statutory text its plain and ordinary meaning, view it in the context in which it appears, and read it in the most natural and reasonable way, as an ordinary speaker of the English language would." *Oconee County v. Cannon*, 310 Ga. 728, 732 (2) (854 SE2d 531) (2021) (citations and punctuation omitted).

Central to our analysis is the qualifying phrase "who is aggrieved by a decision of the department." The question is whether that phrase pertains only to the term that precedes it, which specifies local governments "whose boundaries the proposed

23

project will be located," or pertains to all four categories of persons listed. Answering that question invites us to chose between two competing canons of statutory construction, the "rule of the last antecedent" and the "series-qualifier principle." Our Supreme Court recently faced the same choice. I adopt some of their analysis.

> Under the canon of statutory construction known as the "rule of the last antecedent," a qualifying phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows. However, this rule is not absolute, and the inference it raises may be rebutted where the structure and internal logic of the statutory scheme so militate. Under the alternative "series-qualifier principle," a qualifying phrase appearing at the end of a series should be read to apply to all items in the series when such an application would represent a natural construction. In choosing among the different understandings of the statute proposed by the parties, we must assess the qualifying phrase by reference to its situation within and relationship to the entire statutory text.

Examining the text, structure, and context of OCGA § [31-6-44 (d)], [I] conclude that [Redmond] is right, and the qualifying phrase is most naturally and reasonably understood to modify all of the terms in the series that precedes it. *Thornton v. State*, 310 Ga. 460, 467-468 (3) (851 SE2d 564) (2020) (citations and punctuation omitted). The *Thornton* court went on to inquire how the statute before

24

it could best be understood "in context" and how it could be "most reasonably understood." Id.

Here, the four categories of persons identified in OCGA § 31-6-44 (d) — "applicant[s]," certain "competing applicant[s]," certain competing "health care facilit[ies]," and local governments — have in common that they might be adversely affected by a decision whether to issue a certificate. So all four are likely, in case of an unfavorable outcome — an outcome by which they are "aggrieved" — to wish to appeal to the administrative appeal panel or to expand the scope of an existing appeal. The statute provides for that in a way that is consistent with what anyone generally familiar with our legal system would expect. It directs them to submit their "request for hearing or intervention" to "the chairperson of the appeal panel within 30 days."

All four categories of persons are equally likely to wish to be heard on appeal in support of a favorable outcome — one by which they are not "aggrieved." Someone generally familiar with our legal system would expect that no action would be expected of persons so situated unless and until an aggrieved person appealed. It is difficult to imagine a reason to require them to also meet the 30-day appeal deadline from the issuance of the decision in which they were not aggrieved. In practice such a requirement is a requirement to file preemptively. Such a filing would

25

do nothing to expedite the proceedings. For the department it would create a useless, albeit trivial, administrative burden. For the participants, it would create a pitfall for one side and the prospect of a windfall for the other. In short, while no one argues that the legislature was without power to impose such a requirement, no one has articulated a sensible reason why it might have done so.

It is undisputed that the legislature's use of the word "aggrieved" is an express declination to impose such a requirement. The question is whether that declination applies only to local governments (the last antecedent) or to all four categories of persons authorized to participate in proceedings like these. I would hold that the statute before us is most reasonably understood to extend that declination to all four categories. Consequently, the only persons required to meet the 30-day deadline in the 2008 version[13] of OCGA § 31-6-44 (d) are those who both fall into one of the four identified categories *and* who are aggrieved by a decision of the department and wish to exercise the right conferred by that statute to obtain or expand the scope of an administrative appeal hearing.

---

[13] The "who is aggrieved" qualifier has been deleted from the current version of OCGA § 31-6-44 (d). That may have been an oversight. If so, I respectfully suggest that the General Assembly revisit that provision.

Redmond is a "competing health care facility that ha[d] notified the department prior to its decision that such facility is opposed to the application before the department." See OCGA § 31-6-44 (d). But that does not mean it is aggrieved: it had opposed all three appellees' applications, and all three applications were denied. See *Ga. Power Co. v. Campaign for a Prosperous Ga.*, 255 Ga. 253, 257 (2) (336 SE2d 790) (1985) ("In the context of the Administrative Practice Act, the word 'aggrieved has been interpreted to mean that the party seeking to appeal must show that he has an interest in the agency decision that has been specially *and adversely* affected thereby.") (emphasis supplied); *Homes of Ga. v. Humana Employers Health Plan of Ga.*, 282 Ga. App. 802, 806 (3) (640 SE2d 313) (2006) (party was not aggrieved by agency decision that agreed with party's position on issue at hand).

So it is of no consequence that Redmond did not meet the deadline set out in OCGA § 31-6-44 (d). The version of the statute that was in effect at the time was silent regarding persons who fall within the four categories described by the statute but who are not aggrieved by the department's initial decision.

Instead, to continue its participation in the administrative consideration of the applications, Redmond was required to intervene under the Administrative Procedure Act. OCGA § 31-6-44 (e) provides that where OCGA § 31-6-44 does not otherwise

27

specify, a hearing officer for an administrative appeal from a department decision on an application for a certificate of need "shall act . . . in accordance with Chapter 13 of Title 50, the 'Georgia Administrative Procedure Act,' relating to contested cases." Redmond invokes the provision of that Act addressing permissive intervention, which states:

> In contested cases: . . . Upon timely application, any person may be permitted to intervene when a statute confers a conditional right to intervene or when the applicant's claim or defense and the main action have a question of law or fact in common. In exercising this discretion, the agency shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of existing parties.

OCGA § 50-13-14 (2).

Under this Code section, Redmond was required only to bring a "timely" intervention application. OCGA § 50-13-14 (2). The 30-day deadline established in OCGA § 31-6-44 (d) does not control this timeliness determination because OCGA § 31-6-44 (d) does not apply to Redmond. The lower tribunals never made this determination, because they erroneously required Redmond to meet the requirements of OCGA § 31-6-44 (d). Consequently, Redmond was barred from participating in the administrative appeal process on a legally incorrect ground, and it was reversible

28

error for the superior court to dismiss Redmond's petitions for judicial review based on its failure to participate in the administrative appeal process.

I am not persuaded by the majority's analysis to the contrary. The plain language of OCGA § 31-6-44 (d) does not support the majority's holding that the "aggrieved" qualifier applies only to persons who have a right to an initial hearing, but not those who have a right to intervene in such a hearing, which the majority describes as "interested" but not "aggrieved." Contrary to the majority's view, the concept of "aggrieved intervenors" does make sense within the context of the statute. More than one category of person might be aggrieved by an initial department decision on an application for a certificate of need. For example, both a competing applicant in the same batching cycle and a competing health care facility opposed to the application could be aggrieved by the grant of the application, but once one of those two aggrieved entities asks for an initial administrative appeal hearing, the other could be an "aggrieved intervenor." There is no need to add the concept of an interested but non-aggrieved person to the statute for its language to make sense.

The majority also expresses concern that if such interested but non-aggrieved persons fall outside the scope of OCGA § 31-6-44 (d), then the ability of those persons to participate in appellate consideration would be restricted. But if the

General Assembly had intended to authorize such persons to access the administrative appellate procedures set forth in OCGA § 31-6-44 (d), rather than those available under the Administrative Procedure Act, it could have done so. "We must presume that its failure to do so was a matter of considered choice." *Fair v. State*, 284 Ga. 165, 168 (2) (b) (664 SE2d 227) (2008) (citations and punctuation omitted).

And I do not agree with either the majority or the superior court that the timeliness of Redmond's request under the Administrative Procedure Act is dictated by the terms of OCGA § 31-6-44 (d) because OCGA § 31-6-44 (d) is more specific and recent than the Administrative Procedure Act or because the department has held that the filing deadlines of the two statutes "must be read in conjunction." See *In re Frank A. Critz, M.D.*, Project No. 061-04 (April 1, 2005). The statutory scheme defaults to the procedures in the Administrative Procedure Act unless the CON statutes specify otherwise. OCGA § 31-6-44 (d) does not apply to Redmond, for the reasons set forth above. So as to Redmond the two statutes are not in conflict and need not be harmonized.

The administrative tribunals' error in applying OCGA § 31-6-44 (d) to prevent Redmond from participating in the administrative appellate proceedings impacts all of the superior court's grounds for dismissal. The superior court's rulings in

dismissing Redmond's petitions for judicial review all rest on the same flawed premise — that to intervene, even under OCGA § 50-13-14 (2) of the Administrative Procedure Act, Redmond had to comply with the 30-day filing requirement of OCGA § 31-6-44 (d). Relying on this premise, the superior court held that Redmond lacked standing to challenge the grant of the applications for certificates of need because it had not exhausted its administrative remedies and that it lacked standing to challenge the department's rules regarding certificates of need through a declaratory action because it had not raised that challenge in the administrative proceedings below. Consequently, the superior court held that Redmond could not obtain judicial review under either OCGA § 31-6-44.1 (pertaining to judicial review by parties to initial administrative appeals of decisions on applications for certificates of need) or OCGA § 50-13-19 (pertaining to judicial review of contested cases under the Administrative Procedure Act) and it could not seek declaratory relief under OCGA § 50-13-10.

But as detailed above, Redmond should not have been denied the ability to intervene in the administrative appeal proceedings on the ground that it had not met the filing deadline imposed by OCGA § 31-6-44 (d), because Redmond was not an aggrieved person entitled to intervene under that Code section. Instead, Redmond was entitled to seek permissive intervention under OCGA § 50-13-14 (2), which is not

31

subject to a 30-day deadline. That provisions requires an exercise of discretion. That discretion was abused when Redmond was prohibited from permissively intervening based on a misapplication of OCGA § 31-6-44 (d)'s 30-day filing requirement. See *Blue v. Hemmans*, 237 Ga. App. 353, 357 (1) (749 SE2d 72) (2014) (the misapplication of relevant law is generally an abuse of discretion).

For these reasons, the judgments of the superior court in A21A0087 and A21A0088 should be reversed.